## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

**ORAL ARGUMENT REQUESTED**                    **COMPLAINT**

                                               **JURY DEMAND**

**232 WEST MASON LLC and**
**LLC,**                                       Case No.
**on behalf of themselves and**               Hon.
**others similarly situated.**

              Plaintiffs,

v.

**CITY OF JACKSON, a municipal corporation**
**AND THE FOLLOWING INDIVIDUALS SEVERALLY,**
**IN THEIR INDIVIDUAL AND OFFICIAL CAPACITY:**

**MATTHEW HAGERTY, city attorney, MARK**
**PORTERFIELD, assistant city attorney, BRIAN TAYLOR,**
**Chief Building Official, RICARDO O'CONNOR, Chapter**
**14 Code enforcement official, MICHAEL BRANDT,**
**Chapter 14 Code enforcement official, MARK FISH,**
**Electrical Inspector, SVEN HARRISON, former Chapter**
**14 Code enforcement official, SHANE LAPORTE, former**
**Chapter 14 Code enforcement official, LYDELL TANNER,**
**Chapter 14 Code enforcement official, DAVID**
**BATTERSON, Chapter 14 Code enforcement official,**
**WILLIAM MILLS, former Chapter 14 Code enforcement**
**official, WILLIAM THOMPSON, former Administrative**
**Hearings Bureau Officer, JOHN KANE, Administrative**
**Hearings Bureau Officer, CHARLES FALAHEE,**
**Administrative Hearings Bureau Officer, SERINDA**
**FOSTER, Administrative Hearings Bureau Clerk,**
**JENNIFER GANZEL, Administrative Hearings Bureau**
**assistant**

**Defendants.**

_____

THE TOIVONEN LAW OFFICE
JOHN W. TOIVONEN
120 N. WASHINGTON SQUARE
SUITE 300
LANSING, MI 48933
(888)459-8529

_____

<u>**CLASS-ACTION COMPLAINT**</u>

232 West Mason LLC, a Michigan limited liability company, on behalf of all

others similarly situated, by and through the undersigned attorney, JOHN

WILLIAM TOIVONEN, states for this Complaint as follows:

## I.      PARTIES

1.   The 232 West Mason LLC is a Michigan Limited Liability Company

whose registered office is located in the City of Ann Arbor, County of

Washtenaw, and State of Michigan.

2.   Plaintiff brings this class action on behalf of themselves, and others

similarly situated, who have been issued citations by Jackson Code

Enforcement Officials and then compelled to appear in a city organized

court known as the **Administrative Hearings Bureau, that is**

**reminiscent of the surreal Court depicted in Kafka's seminal work,**

***THE TRIAL.*** This City created court was conceived contravening

State statute, Respondents then appear to defend against tickets that

were issued to them by the City that are so broad in their description of

their allegations as to be meaningless, Judges quash subpoenas against

themselves, and as admitted by one of its own Judges, this City created

court stated purpose  is the "**usual scope-which is negotiation**

**between the parties and the entry of a consent judgment"**  for fine

money generation for the City rather than an impartial tribunal

affording Constitutionally mandated Due Process to those who appear before it thereby depriving persons and entities within the city of Jackson of their Fourth, Fifth, and Fourteenth Amendment constitutionally mandated civil rights.

3.    Defendant, City of Jackson, is a municipal corporation located within Jackson County, in the State of Michigan.

4.    Pursuant to 42 USC § 1983, "**Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.**"

5.    The natural persons who are named as defendants in this complaint do not enjoy qualified immunity as the City Council, City Attorney's office, Building Department management, Code enforcement officials and the City Administrative Hearings Bureau

staff, worked in concert, under color of law, to deprive property

owners within the city limits of Jackson of their Fourth, Fifth, and

Fourteenth Amendment civil right to due process.

## II.    JURISDICTION AND VENUE

6.    Plaintiff incorporates the preceding paragraphs.

7.    Jurisdiction by this Court over Plaintiffs' constitutional claims is

proper pursuant to 28 USC § 1343 and 28 USC § 1331.

8.    Supplemental jurisdiction over any state law claims is proper

pursuant to 28 USC § 1367.

9.    Venue is proper in this District pursuant to 28 USC § 1391

because the district is where the Defendants reside, where a

substantial part of the events and omissions occurred giving rise

to Plaintiff's claims, and where a substantial part of all properties

subject to the action are located.

10.    As additional Class Plaintiffs are identified, this District will

remain the most convenient venue in which all future cases can

be considered and consolidated, as necessary.

## III.    NATURE OF THE ACTION

11.    Plaintiff incorporates the preceding paragraphs.

12.    This action is brought on behalf of a class of:

a.    All persons and entities who appeared in the unlawfully created Jackson Administrative Hearings Bureau that when formed failed to adopt all mandated statutory formal training requirements for Administrative Hearings Bureau Officer adjudicating Administrative Hearings Bureau proceedings, and failed to adopt, publish and make available for copying and inspection, rules  of procedure which govern Administrative Hearings Bureau proceedings, thereby depriving appearing Respondents of their Constitutionally mandated Rights from the date of the ordinance creating the Bureau on January 1, 2005 and up to and including April 15, 2024 and whom were subsequently and unlawfully assessed "costs" without a city resolution to do so which became a lien or whom subsequently paid them.

b.    All persons and entities who appeared in the unlawfully created Jackson Administrative Hearings Bureau that when formed failed to adopt all mandated statutory formal training requirements for Administrative Hearings Bureau Officer adjudicating Administrative Hearings Bureau proceedings, and failed to adopt, publish and make available for copying and inspection, rules  of procedure which govern Administrative Hearings Bureau proceedings, thereby depriving appearing

Respondents of their Constitutionally mandated Rights from the date of the ordinance creating the Bureau on January 1, 2005 and up to and including April 15, 2024 and whom were subsequently and unlawfully assessed "fines" without a city resolution to do so which became a lien or whom subsequently paid them.

c.      All persons and entities of whom the City conducted an inspection of their Chapter 14 Non Owner-Occupied Property without the benefit of obtaining a search warrant as mandated by local statute 14-42 (5) subsequently contravening their Fourth, Fifth and Fourteenth Amendment rights since the creation of the Chapter 14 ordinance on March 22, 2012.

13.    The State of Michigan pursuant to the Home Rule City Act (MCL 117.1 et seq.) permits municipal corporations like the City to adopt certain laws, codes, or rules for building maintenance issues.

14.    MCL 117.3 (K) specifically addresses the adoption of certain building codes:

> Except as otherwise provided under the Stille-DeRossett-Hale single state construction code act, 1972 PA 230, MCL 125.1501 to 125.1531, a city may adopt a law, code, or rule that has been promulgated and adopted by an authorized agency of this state pertaining to fire, fire hazards, fire prevention, or fire waste, and a fire prevention code, plumbing code, heating code, electrical code, building code, refrigeration machinery code, piping code, boiler code, boiler operation code, elevator machinery code, an international property maintenance code, or a code pertaining to

flammable liquids and gases or hazardous chemicals, that has been promulgated or adopted by this state, by a department, board, or other agency of this state, or by an organization or association that is organized and conducted for the purpose of developing the code, by reference to the law, code, or rule in an adopting ordinance and without publishing the law, code, or rule in full. The law, code, or rule shall be clearly identified in the ordinance and its purpose shall be published with the adopting ordinance. Printed copies of the law, code, or rule shall be kept in the office of the city clerk, available for inspection by, and distribution to, the public at all times. The publication shall contain a notice stating that a complete copy of the law, code, or rule is made available to the public at the office of the city clerk in compliance with state law requiring that records of public bodies be made available to the general public.

15.   The city has adopted and enacted a number of codes and ordinances pursuant to the Home Rule City Act and MCL 117.3 (K).

16.   The City has adopted and enacted a number of such ordinances and regulations, one of which is titled the **Non-Owner Occupied Residential Rental Property Registry** (**N.O.O.R.P.**) of the Code of Ordinances of the City of Jackson, Michigan, Article I, Sections 14-1, *et seq*. ("Article" or "Ordinance").

17.   The City has adopted and enacted a number of such ordinances and regulations, one of which is titled the Chapter 2.5 **Administrative Hearings Bureau** of the Code of Ordinances of the City of Jackson, Michigan, Article I, Sections 2.5-1, *et seq*. ("Article" or "Ordinance").

18.   The city has adopted and enacted a "findings and purpose" definition

for the enforcement of the Chapter 14 Article I Non-Owner-Occupied Residential Property Registry:

**Sec. 14-2. Findings and purpose.**

The city council finds that there are **non-owner-occupied** residential dwellings or units in the city that have become unsafe, unsanitary and unsecure due to deterioration. The city council finds that it is in the best interests of the health, safety and welfare of the city and its residents to require that all **non-owner-occupied** residential dwellings or units be registered and inspected **to ensure safe, secure and sanitary living conditions for those *residing in* non-owner-occupied residential dwellings or units.** The city council also finds that by requiring property registration of all **non-owner-occupied** residential dwellings or units in the city, the continuing maintenance of safe and quality non-owner-occupied residential dwellings and units will be maintained and property values will be enhanced. The city council also finds that requiring designation of a responsible local agent will ensure timely notice under the law to the property owner and assist code enforcement inspectors in their duties to inspect non-owner-occupied dwellings or units.

(Ord. No. 2012-03, § 1, 2-21-12)

19.    The city has also adopted and enacted ordinances that regulate the operation of non-owner-occupied housing within the city. Pursuant to these ordinances, an owner of non-owner-occupied real property whose desire is to rent their property must register the property with the city.

**Sec. 14-4. Property registration required.**

(1) No person shall rent, lease, offer for rent or lease, or allow another person to occupy any **non-owner-**

9

occupied residential dwelling or unit without a property registration issued by the city.

(2) Upon the adoption of this chapter, any owner of a **non-owner**-occupied residential dwelling or unit must register the **non-owner**-occupied residential dwelling or unit within one hundred twenty (120) days of the effective date of this chapter. Upon expiration of the initial one hundred twenty-day period, an owner of a **non-owner-occupied** residential dwelling or unit must register the non-owner-occupied residential dwelling or unit within forty-five (45) days of the **non-owner**-occupied residential dwelling or unit becoming **non-owner occupied**.

(Ord. No. 2012-03, § 1, 2-21-12; Ord. No. 2020-09, § 2, 7-14-20)

20.    The city has also adopted and enacted ordinances that regulate the operation of non-owner-occupied housing within the city. Pursuant to these ordinances, the issuance of a non-owner-occupied residential property registration shall be issued subject to the following terms and conditions:

**Sec. 14-7. Issuance of property registration.**

A property registration shall be issued if the applicant meets all of the following requirements:

(1)   An application form is properly submitted;

(2)   An acknowledgment of local responsible agent form is submitted and signed by the local responsible agent, if required;

(3)   All application fees are paid;

(4)   All outstanding inspection fees and late fees are paid;

(5)   Payment in full of all of the following fines, fees and debts relating to the property being

10

registered owed to the city that are currently due or past due, including but not limited to:

   a. Outstanding water or sewer bills;

   b. All charges for mowing, cleanup, weed or debris removal; and

   c. Any fees, penalties, or debts of any sort arising from provisions of the housing code, including any blight violations.

(Ord. No. 2012-03, § 1, 2-21-12)

21. The city has adopted and enacted an inspection regimen for the **Chapter 14 Non-Owner-Occupied Residential Property Registry Article II-Minimum Housing Standards** which is unambiguously clear that "in a non emergency situation" an administrative search warrant be obtained by the city to conduct a Chapter 14 inspection and which is titled**:**

**Sec. 14-42. Inspections.**

(1) In order that they may perform their duties to safeguard the health, safety and welfare of the *occupants* of dwellings and of the general public, the chief building official, chief of police and fire official are hereby authorized to make or cause to be made such inspections of dwellings or dwelling units as are necessary to enforce the provisions of this article. The inspections that are authorized for the purpose of enforcement of the provisions of this article shall be made at a reasonable time. The word "dwelling" as used in this paragraph shall include, but not be limited to, those categories of structures defined in section 14-26.

(2) The chief building official, chief of police and fire official shall inspect buildings and structures regulated

by this article. Inspections may be conducted even though a current certificate of compliance is on record with the department of neighborhood and economic operations.

(3) An inspection shall be conducted in the manner best calculated to secure compliance with this article and appropriate to the needs of the community.

(4) In an emergency situation, the chief building official, chief of police and fire official have the right to enter at any time. for purposes of this article, an emergency shall exist when the chief building official, chief of police or fire official has reasonable grounds to believe that a condition hazardous to health or safety exists on the premises and requires immediate attention.

(5) **In a nonemergency situation or where the owner or occupant of any dwelling demands a warrant for inspection of the premises, the chief building official, chief of police or fire official shall obtain a warrant from a court of competent jurisdiction.**

(Code 1977, § 8.604; Ord. No. 93-22, § 1, 10-12-93; Ord. No. 2012-03, § 1, 2-21-12; Ord. No. 2020-09, § 2, 7-14-20)

22. The city has adopted and enacted certain maintenance codes for the

**Chapter 14 Non-Owner Occupied Residential Property**

**Registry Article II-Minimum Housing Standards:**

**Sec. 14-72. Exterior building envelope.**

Unless otherwise provided, no person shall occupy or let to another for occupancy, any dwelling or dwelling unit for the purpose of living therein which does not comply with the following requirements:

(1) Structure. Every foundation, wall and **roof shall be reasonably weatherproof, waterproof**, and rodent-proof, shall be capable of privacy and kept in good repair.

12

a.    The foundation elements shall adequately support the building at all points of the building footprint.

b.    Every exterior wall shall be free of holes, breaks, loose or rotting boards or timbers, and any other condition which might admit rain, dampness or rodents to the interior portions of the walls, or which might provide harborage for insects or other vectors of disease. Exterior walls and wood trim shall be well and sufficiently painted so as to prevent same from deteriorating and becoming havens for rodents, insects and other vectors of disease. Defective paint that is suspected of containing lead levels in excess of allowable limits shall be treated or removed in accordance with established H.U.D. and E.P.A. guidelines.

c.    **The roof system shall be free of defects of any kind** including, but not limited to, deflection that is not a consequence of, or results in, an unsafe condition, the admission of moisture, damage to structural members, sheathing, flashings, roof covering, ventilation, and drainage systems.

d.    Gutters and downspouts shall be provided so as to prevent rainwater from causing dampness in the walls or interior portion of the building and to prevent ground water from migrating to or entering into the basement walls or foundation.

(2)    *Stairs and porches.* Every inside and outside stair, every porch and every appurtenance thereto shall be so constructed as to be safe to use and capable of supporting the loads to which they are subjected and shall be kept in sound condition and in good repair. In the case of stairs with four (4) or more risers, the stairway shall be equipped with a full length handrail and/or guardrail. Such handrails and guardrails shall be installed in accordance with the state building code or the state residential code.

(3)   *Openings.* Every window, exterior door, and basement hatchway and their frames shall be maintained in good repair, operate as designed and intended, and shall be weatherproof, rodent-proof, and waterproof.

(4)   *Chimneys.* All chimneys shall be maintained in sound condition, free of holes and breaks and operate as intended. All chimneys shall be properly capped and supplied with an appropriate cleanout. The top of the chimney shall be at least two (2) feet above any point on the roof within a ten-foot radius of the chimney but shall not be less than three (3) feet above the highest point where the chimney passes through the roof.

(5)   *Street numbers.* All buildings shall bear distinctive street numbers at least four (4) inches in height at or near the front entrance of such building. The owners of all buildings shall cause the correct numbers to be placed thereon. All numbers shall be facing the street, shall be of a contrasting color and in such a position as to be plainly visible from the street. The use of Arabic numerals is required.

(Code 1977, § 8.621; Ord. No. 2012-03, § 1, 2-21-12)

23.   In Chapter 14 Article II-Minimum Housing Standards, Section 14-26 "Definitions", no definition exists for "kept in good repair", "reasonably weather proof",  "reasonably waterproof", "free of defects", and "defect".

24.   "A statute is unconstitutionally vague if it denies fair notice of the standard of conduct for which the citizen is to be held accountable, or if it is an unrestricted delegation of power which leaves the definition of its terms to law enforcement officers." American-Arab

14

Anti-Discrimination Comm. v. City of Dearborn, 418 F.3d 600,

608–09 (6th Cir. 2005); see also Belle Maer Harbor v. Charter Twp.

of Harrison, 170 F.3d 553, 556 (6th Cir. 1999) (applying same

standards to ordinance). A licensing scheme must have a "narrow,

objective, and definite standards to guide the licensing authority" so

as not to provide undue discretion to law enforcement.  American-

Arab Anti-Discrimination Comm., 418 F.3d at 609.

25.  Accordingly, the cited Chapter 14 ordinance is, on its face,

unconstitutionally vague and unenforceable and their application to

this Plaintiff therefore resulted in violations of their due process.

26.  At a series of Chapter 14 Non Owner Occupied Residential

Property (N.O.O.R.P) inspections conducted on 232 West Mason

street in Jackson Michigan, from March 2016 through July 2018,

the managing member of the 232 West Mason LLC, the owner of

232 West Mason, Loren Romain, meets Code Enforcement Official

Ricardo John O'Connor who conducts Chapter 14 Code inspections

for the City.

27.  O'Connor contravenes Chapter 14-42 (5), which he is charged with

enforcing, on numerous inspection occasions at 232 West Mason

by **failing to obtain a search warrant to conduct an inspection**,

which is required pursuant to Chapter 14-42 (5) which is

unambiguously clear that "**In a nonemergency situation** or where

the owner or occupant of any dwelling demands a warrant for inspection of the premises, the chief building official, chief of police or fire official **shall obtain** a warrant from a court of competent jurisdiction."

28.  In lieu of obtaining a search warrant, which is required pursuant to Chapter 14-42 (5) to afford the owner of real property Due Process, Code Enforcement Official O'Connor thrusts  a City created preprinted consent to search document at each scheduled inspection in Loren Romains hands, without statutory authority to do so, and then demands that Romain provide consent for the inspections to be performed by him or be penalized and invoiced Two hundred Fifty Five Dollars ($255.00) for each inspection Romain refuses to provide written consent. Pursuant to the threat of financial penalty and under duress, Romain reluctantly agrees to provide consent for O'Connor to conduct inspections. O'Connor then performs Chapter 14 inspections without the benefit of an administrative search warrant as mandated by ordinance.

29.  Code Enforcement Official O'Connor cites as a N.O.O.R.P Article II violation in his inspection reports "14-72 (1)c Exterior Building Envelope. The roof system sheathing, flashing, or shingles are not maintained in sound condition and good repair" and further elaborates that "shingles deteriorated, curled or missing at multiple

16

roof surfaces". Romain protests vehemently to O'Connor that the roof is not defective, which would affect its ability to shed water and keep the occupants of the structure free from the intrusion of the exterior elements. Therefore, Romain argues with O'Connor that the roof is "reasonably weatherproof and waterproof" pursuant to Chapter 14-72 (1)c and therefore complies with Chapter 14 Article II Minimum Housing Standards.

30. Subsequent inspections of the interior of the 232 West Mason structure by Code Enforcement Official O'Connor reveals no evidence of a compromised roof and discussion with the occupants provides further confirmation for O'Connor that the roof is both "reasonably weatherproof and waterproof" pursuant to code. Nonetheless, O'Connor insists that "the roof system sheathing, flashing, or shingles are not maintained in sound condition and good repair" and demands that Romain must obtain a building permit and replace the roof, or a citation will be issued to the 232 West Mason LLC and the matter adjudicated within the confines of the city of Jackson Administrative Hearings Bureau.

31. To prolong the use of a roof that is "reasonably weatherproof and waterproof", which local code requires, evade the unnecessary cost of a roof replacement, and to avoid paying an unjust retaliatory punitive fine to the city of Jackson, Romain, a licensed Michigan

builder, applies for and obtains three building permits for roof

replacement at 232 West Mason beginning in October 2016. The

232 West Mason LLC has, in effect, paid "protection money", in

the form of building permit fees, to the city of Jackson, to prolong

the use of a roof which meets local code, and, as Romain believes, a

citation will, in all likelihood, not be issued to the 232 West Mason

LLC during the time period of an active building permit. A building

permit is valid for six months from the date of issue.

32. The state of Michigan Home Rule City Act, Act 279 of 1909,

allows for the establishment of an Administrative Hearings Bureau

within a municipality, subject to the requirements contained therein

MCL 117.4q, to adjudicate violations of ordinances designated as

blight violations or charter violations.

33. The city of Jackson has adopted and enacted a number of codes and

ordinances pursuant to the Home Rule City Act and MCL 117.4q.

34. The city has created an Administrative Hearings Bureau.

**Sec.  2.5-11. Administrative  hearings  bureau—
Establishment and composition.**

The city council establishes an office of the municipal
government to be known as the administrative hearings
bureau ("bureau"), which is authorized to conduct
administrative adjudication proceedings for departments
and agencies of the city for blight violations, as defined in
section 2.5-2.

18

The bureau will be administered by an administrative hearings officer, who will be appointed by the mayor, subject to approval by the city council, and staffed by other employees as may be provided for in the annual appropriation ordinance. The administrative hearing officer will serve a term of two (2) years and is removable only upon reasonable cause.

The administrative hearings officer will be compensated as set forth in section 2-424, as it may be amended from time to time.

(Ord. No. 2016-19, § 2, 9-6-16)

35. Pursuant to MCL 117.4q (2) **"The expense of the operation of an administrative hearings bureau shall be borne by the city establishing the bureau."**

36. Pursuant to MCL 117.4q (11):

"The ordinance establishing the bureau shall provide for adjudicatory hearings by hearing officers. Each hearing officer shall be an attorney licensed to practice law in this state for at least 5 years. Hearing officers shall be appointed in a manner consistent with the charter of the city for the appointment of other municipal officers or employees and shall only be removed for reasonable cause. **Before conducting administrative adjudication proceedings, administrative hearing officers <u>shall successfully complete a formal training program which includes all of the following:</u>**

19

a) **Instruction on the rules of procedure of the administrative hearings that they will conduct.**

b) **Orientation to each subject area of the ordinance violations that they will adjudicate.**

c) **Observation of administrative hearings.**

d) **Participation in hypothetical cases, including ruling on evidence and issuing final orders.**

e) **The importance of impartiality in the conduct of the administrative hearing and adjudication of the violation.**

f) **Instructions on the preparation of a record that is adequate for judicial review."**

37.  The city of Jackson has adopted training requirements for Administrative Hearings Bureau Officers:

**Sec. 2.5-14. Administrative hearing officer—Training requirements.**

Before conducting any administrative adjudication proceeding, an administrative hearing officer must have successfully completed a formal training program, which includes the following:

**(1)   Instruction on the rules of procedure of the administrative hearings, which he or she will conduct;**

**(2)   Orientation to each subject area of the code violations, which he or she will adjudicate;**

**(3)   Observation of administrative hearings; and**

**(4)   Participation in hypothetical cases, including ruling on evidence and issuing final orders.**

(Ord. No. 2016-19, § 2, 9-6-16)

38.   What is both revealing and telling is that City of Jackson legislatively, willfully and deliberately omits statutorily mandated training requirements **e) The importance of impartiality in the conduct of the administrative hearing and adjudication of the violation. f) Instructions on the preparation of a record that is adequate for judicial review."** for Administrative Hearings Bureau Officers training from the City of Jackson ordinance which would be to the Constitutional benefit of the Respondent appearing in the Administrative Hearings Bureau thereby depriving that Respondent of their Constitutional Right of Due Process.

39.   The city of Jackson advertises for the employment position of an Administrative Hearings Bureau Officer requiring only four of the six State statutory training requirements, (a)-(d). Training requirements (e) and (f), which are clearly and Constitutionally a benefit to a Respondent in the Administrative Hearings Bureau, are conspicuously and deliberately absent. <u>See</u> Administrative Hearings Office Employment Posting set forth as Exhibit "A".

40.   The city of Jackson has adopted rules which govern the conduct of administrative adjudication proceedings:

**Sec. 2.5-15. Rules—Available for public inspection.**

21

**The rules promulgated by the bureau for the conduct of administrative adjudication proceedings must be published within sixty (60) days of the adoption of this chapter and thereafter kept on file in the office of the city clerk for public inspection and copying during normal business hours.**

(Ord. No. 2016-19, § 2, 9-6-16)

41. The city of Jackson has adopted a notice mandate which governs the notification to a party of administrative adjudication proceedings:

### Sec. 2.5-18. Notice.

(a) **Before any administrative adjudication proceeding may be conducted, the parties must be afforded notice in compliance with this section.**

(b) Unless otherwise provided by law or rule, the issuer of a notice of violation or notice of hearing must specify in the notice his or her name and department; where known, the name and address of the person or entity charged with the violation; the date, time, and place of the violation; the section of the Code or departmental rule or regulation which was allegedly violated; and certify the correctness of the specified information by signing his or her name to the notice with the following: "I declare under the penalties of perjury that the statements above are true to the best of my information, knowledge, and belief." A notice of hearing including the date, time, and location of the hearing and the penalties for failure to appear at the hearing must be included.

(c) Unless otherwise provided by law or rule, a notice of violation or **notice of hearing must be served upon the alleged violator no less than fourteen (14) calendar days before the date of the hearing:**

(1) By first class, express mail, or by overnight carrier

22

addressed to the address of the owner of the property as listed by the records of the city assessor or, if the violator is a business entity, in the alternative, at any address identified for its registered agent or at its principal place of business;

(2)    By personal service, including personal service upon an employee or agent of the alleged violator at a place of business of the alleged violator or otherwise if such service is reasonably calculated to give the alleged violator actual notice; or

(3)    If service cannot be made under subsections (1) or (2) above, when the alleged violator is the owner or manager of the property, by posting a copy of the violation notice on the front entrance of the building or other structure where the violation is found, or if the property is unimproved or fenced off, by posting a copy of the violation notice in a prominent place upon the property where the violation is found.

(d)    In all non-emergency situations, if requested by the respondent, the respondent has at least fifteen (15) days after the date of mailing or other service of a notice of violation or notice of hearing to prepare for a hearing. For purposes of this section "non-emergency situation" means any situation that does not reasonably constitute a threat to the public interest, safety, or welfare.

(Ord. No. 2016-19, § 2, 9-6-16)

42.   The city of Jackson has adopted a mandate which governs the

issuance of a subpoena for administrative adjudication proceedings:

**Sec. 2.5-21. Subpoenas.**

(a)    An administrative hearing officer may issue a subpoena only if he or she determines that the testimony of the witnesses or the documents or items sought by the subpoena are necessary to present evidence that is:

(1)    **Relevant to the case, and**

(2)   **Relates to a contested issue in the case**.

(b)   A subpoena issued under this chapter must identify:

(1)   The person to whom it is directed;

(2)   The documents or other items sought by the subpoena, if any; and

(3)   The date, time, and place for the appearance of the witnesses and or the production of the documents or other items described in the subpoena.

(c)   The date identified for the appearance of the witnesses or the production of the documents or other items must not be less than seven (7) days after service of the subpoena.

(d)   Within three (3) business days of being served with a subpoena issued in accordance with this chapter, **the recipient of the subpoena may appeal the order authorizing the issuance of the subpoena to an administrative hearing officer, who <u>is not be the same administrative law officer who ordered the issuance of the subpoena.</u>**

(Ord. No. 2016-19, § 2, 9-6-16)

43.   **Sec. 2.5-53. Penalties.**

All blight violations under this Code are subject to enforcement by the procedures and penalties outlined in this chapter. **<u>The city council will establish a schedule for the potential fines for violations by resolution,</u>** and as amended from time to time.

(Ord. No. 2016-19, § 2, 9-6-16)

44.   On or about October 20, 2019, the managing member of the 232

West Mason LLC, Loren Romain, receives a citation from the city

of Jackson by first class mail dated October 10, 2019, for a

"Housing Code" violation that allegedly occurred on April 25,

2018. Housing Code violations are considered blight and are

therefore adjudicated by the city of Jackson Administrative

Hearings Bureau. The citation commands Romain to appear at an

Administrative Hearings Bureau proceeding on the second floor of

the Jackson City Hall on November 6, 2019, at 2:00 p.m. See 232

W. Mason Violation and Notice of Hearing set forth as Exhibit "B".

45.   The citation issued by Code Enforcement Officer Ricardo John

O'Connor of the City of Jackson to the 232 West Mason LLC states

only that **the citation is for a "Housing Code" violation**.  **The**

**citation issued by O'Connor is so broad as to be meaningless.**

**The citation refers to the entire Chapter 14 Housing Code,**

**which is approximately forty five pages in length and contains**

**420 subsections.** The citation does not state which subsection of

the code was allegedly contravened by the 232 West Mason LLC.

Therefore, the 232 West Mason LLC cannot adequately prepare and

defend against such broad allegations contained within the citation

and suffers an immediate loss of its Constitutional right of Due

Process.

46.   Loren Romain, the managing member of the 232 West Mason LLC,

appears as directed on the Second Floor of the Jackson City Hall on

November 6, 2019 to attend an Administrative Hearings Bureau

proceeding on behalf of the 232 West Mason LLC. Presiding is

Administrative Hearings Bureau Officer William Thompson.

47. Romain appears at the hearing and states on the record that he is the Resident Agent of the 232 West Mason LLC and appearing on behalf of and representing the 232 West Mason LLC. Administrative Hearings Bureau Officer Thompson explicates to Romain that Romain must be an LLC member to appear on behalf of the LLC and then queries Romain if he is a member of the 232 West Mason LLC. Romain replies in the affirmative that he is indeed the managing member of the 232 West Mason LLC. Thompson acknowledges and approves of Romains appearance on behalf of the 232 West Mason LLC.

48. Romain is then directed into a side anteroom where he meets with Assistant City Attorney Mark Porterfield and Code Enforcement Official Shane LaPorte. Romain places Porterfield and LaPorte on notice that he is the managing member of the 232 West Mason LLC and has appeared at the hearing as its representative.  Porterfield offers to the 232 West Mason LLC, by and through its managing member, Loren Romain, a settlement which would  waive any fines associated with the citation that was issued  if Romain will agree to remunerate the costs to the City associated with his appearance at the hearing, which contravenes  MCL 117.4q (2) that requires "The expense of the operation of an administrative hearings bureau shall be borne by the city establishing the bureau.", and replace the roof

within a stated time period.

49.   Romain explains to Porterfield that he disagrees with the findings
      of Code Enforcement Official O'Connor that the roof needs to be
      replaced as it is "reasonably waterproof and weatherproof" pursuant
      to Chapter 14 code. Romain inquires of Porterfield if there is a
      mechanism to appeal the alleged roof violations cited by Code
      Enforcement Official O'Connor. Porterfield replies in the
      affirmative and presents Romain with a preprinted, complete the
      appropriate box document titled "Building Code Board of Appeals
      Application" that Porterfield states MUST accompany an appeal
      request along with an application fee. Porterfield then provides the
      document to Romain. See City of Jackson Building Code Board of
      Appeals Application set forth as Exhibit "C".

50.   While negotiating with Porterfield, Romain queries the amount of
      the costs associated with his appearance at the Administrative
      Hearings Bureau on November 6, 2019 with Mark Porterfield, the
      Assistant City Attorney. To Romains astonishment, Porterfield
      replies "Three Hundred Twenty Dollars ($320.00)". When Romain
      inquires of Porterfield how that amount for costs was derived at
      Porterfield responds, "by City Resolution".  Romain forthwith
      requests a copy of the resolution from Porterfield that authorizes the
      City to invoice for costs associated with an appearance by a

Respondent in the Administrative Hearings Bureau and then politely declines the settlement offer by the City. Romain then requests of Porterfield that a trial be scheduled for the 232 West Mason LLC in the Administrative Hearings Bureau. Porterfield agrees to provide Romain with a copy of the City Resolution, at a later date, that allows the City to invoice a Respondent in the Administrative Hearings Bureau for costs associated with their hearing and then directs Romain to depart the anteroom and see the clerk of the Administrative Hearings Bureau Serinda Foster.

51. Romain then speaks with the clerk, Foster, stating that the desire of the 232 West Mason LLC is to adjudicate the citation within the Administrative Hearings Bureau. Romain then places Administrative Hearings Bureau Officer William Thompson on notice of the request of the 232 West Mason LLC to engage in a trial. Romain then inquires of Thompson as to what rules has the city adopted which govern proceedings in the Administrative Hearings Bureau. Thompson reply is the Michigan Court Rules. Pursuant to the Michigan Court Rules, which allow for trial by jury, Romain forthwith requests a trial by jury from Thompson. Thompson states to Romain that the Administrative Hearings Bureau does not make an allowance for a trial by jury and rejects Romains request for such. Romain then informs Thompson that

Porterfield has provided him with a preprinted form to submit to the Building Code Board of Appeals for consideration. Romain is then notified that he may depart the hearing and receives notice that the next scheduled hearing date is February 12, 2020. <u>See</u> Notice of Continued Administration set forth as Exhibit "D".

52. Upon examination of the document titled "Building Code Board of Appeals Application" presented to him by Assistant City Attorney Mark Porterfield at the November 6, 2019, hearing, Romain discovers that the application, which, pursuant to Porterfield's instructions, MUST accompany an "appeal" to the Building Code Board of Appeals, **does not in fact allow for any type of an appeal to vacate a cited violation.** The document only allows for a "variance" of a cited violation, a request for additional time to complete work on a cited violation, a request for a "financial hardship" variance, whatever that may mean, and a request to waive the application fee for a submitted application. <u>See</u> City of Jackson Building Code Board of Appeals Application set forth as Exhibit "C".

53. The 232 West Mason LLC, by and through its managing member Loren Romain, appears at the scheduled hearing on February 12, 2020. When queried by Assistant City Attorney Mark Porterfield if an application was made for an appeal of the roof violations

Romain explained to Porterfield that the document he tendered to Romain and which must accompany any appeals process, does not in fact allow for an appeal to vacate a cited violation. Therefore, Romain explains to Porterfield, he did not submit the application for consideration to the Building Code Board of Appeals. Furthermore, Romain reiterated his desire to Porterfield for a trial in the Administrative Hearings Bureau.

54. Before departing the anteroom meeting with Porterfield, Romain queried Porterfield if he had a copy of a city resolution allowing the city to collect Three hundred Twenty dollars ($320.00) in costs from each Respondent who appeared in an Administrative Hearings Bureau proceeding as Porterfield alleged to be in existence at the hearing on November 6, 2019. **Porterfield responded to Romains question by stating he could not locate such a city resolution.**

55. Loren Romain, in his official capacity as the managing member of the 232 West Mason LLC, filed a Freedom of Information Act request with the city of Jackson, demanding that the City produce any Administrative Hearings Bureau Officer formal training documentation in their possession that demonstrates that Administrative Hearings Bureau Officer William Thompson, is formally trained pursuant to state statute in all six mandated formal training topics and all four city ordinance mandated formal training

30

requirements prior to conducting administrative adjudication

proceedings. **The city admitted in its response to the Romains FOIA that it is not in possession of any records that demonstrate that William Thompson has ever been formally trained pursuant to state statute or local ordinance prior to conducting an Administrative Hearings Bureau proceeding.** See Certificate of Non-Existence of William Thompson's Training set forth as Exhibit "E".

56.   The 232 West Mason LLC, by and through its managing member, Loren Romain, served an unsigned subpoena via electronic mail to Administrative Hearings Bureau Officer William Thompson, by and through the city legal assistant, Debra Noga, on May 20, 2020, to produce documents that demonstrate that he, Thompson, has been lawfully and formally trained in the compulsory six statutorily mandated State formal training requirements that must be completed prior to conducting administrative adjudication proceedings. A hearing was scheduled for September 9, 2020 to rule on the issuance of a subpoena to Administrative Hearings Bureau Officer William Thompson. See Subpoena of William Thompson set forth as Exhibit "F".

57.   The 232 West Mason LLC managing member, Loren Romain, upon reviewing the hearing notice, was surprised to learn that William

Thompson was to preside over the hearing and then rule on whether

the subpoena would be issued to himself and then complied with.

Furthermore, Romain was shocked and dismayed that the city of

Jackson Administrative Hearings Bureau would demonstrate such a

flagrant disregard for impartiality, analogous to a third world

"Banana Republic" justice system, display a perception of

egregious impropriety, and that Thompson himself would not

statutorily recuse himself from such an easily recognizable conflict

of interest by ruling on the authorization and issuance of a

subpoena to himself.

58. Due to a scheduling conflict of managing member Loren Romain,

the 232 West Mason LLC, requested of William Thompson, by and

through the Administrative Hearings Bureau clerk, Serinda Foster,

to adjourn the 232 West Mason LLC scheduled 9 a.m. morning

subpoena request hearing to the afternoon of September 9 or to a

later date. Thompson refused to adjourn the scheduled hearing. See

Administrative Hearings Bureau Notice of Hearing on September 9,

2020 set forth as Exhibit "G".

59. The 232 West Mason LLC then withdrew the subpoena served

electronically on May 20 and for which a hearing was scheduled to

review on September 9 at 9 a.m. Loren Romain then placed the

Administrative Hearings Bureau clerk, Serinda Foster, on notice,

via electronic mail, of the 232 West Mason LLC decision to withdraw the previously tendered subpoena on May 20. Foster acknowledges the withdrawal of the 232 West Masons LLC subpoena via electronic mail to Romain. See Email Communication with Serinda Foster Dated September 9, 2020 to Withdraw Subpoena set forth as Exhibit "H".

60. The 232 West Mason LLC then proceeded to hire a court officer to serve William Thompson with a new subpoena and an order to appear and/or produce the documents demonstrating that Thompson has the statutorily mandated formal training to adjudicate Administrative Hearings Bureau proceedings. See New Subpoena for William Thompson and Order to Produce set forth as Exhibit "I". Loren Romain, managing member of the 232 West Mason LLC, instructed the Court Officer that when she conducted the service, to first request that Thompson sign the bottom of both the subpoena and order to appear/produce to remove the legal argument from the City that the subpoena was defective on its face for not having an Administrative Hearings Bureau Officers signature authorizing the issuance of a subpoena and/or order to appear and produce. The court officer dutifully appeared at the morning hearing that the 232 West Mason LLC was originally scheduled to attend on September 9, 2020, at 9 a.m. prior to withdrawing the

subpoenas, and following Romains instructions, requested that Thompson sign both documents thereby authorizing the subpoena and the order to appear and/or produce. Romain was informed by the court officer that was retained to serve documents upon Thompson, that upon requesting of Thompson to sign the subpoena and/or order to appear Thompson uttered to her, "he withdrew his subpoena-this is asinine". Thompson, with his egregious comment to the court officer, further demonstrated a lack of statutorily mandated formal impartiality training. Thompson subsequently refused to sign either document presented to him. The processor server then requested the court clerk, Serinda Foster, to sign the documents. Before Foster could reply, Thompson interrupted the conversation between the process server and Foster and stated to the Court Officer that Serinda Foster was not empowered to sign the documents. Thompson was then served the unsigned documents by the process server. See Affidavit of Sandra Walker (Process Server) set forth as Exhibit "J".

61. Thompson, willfully and egregiously contravening city of Jackson ordinance 2.5-18 [c] which mandates that a notice of an Administrative Hearings Bureau proceeding be served upon a respondent no less than fourteen (14) days prior to a scheduled hearing, forthwith, without any notice to the 232 West Mason LLC,

held a summary hearing, thereby flagrantly and willfully

contravening the Constitutional Right of Due Process to the 232

West Mason LLC and its managing member, Loren Romain.

Thompson then denied the 232 West Mason LLC request for a

subpoena and/or order to appear for the following reasons: (i) the

documents submitted are defective on their face (ii) **the records**

**requested do not exist,** (iii**) and for additional reasons stated on**

**the record.** Notice was then sent to the 232 West Mason LLC via

electronic mail informing managing member Loren Romain of this

nefarious, unlawful and illegitimate ruling by William Thompson,

Administrative Hearings Bureau Officer. <u>See</u> Response to Request

for Subpoena set forth as Exhibit "K".

62. The city of Jackson Ordinance 2.5-15, which is unambiguously

clear, mandates that the procedural rules that govern Administrative

Hearings Bureau proceedings are to be published within (60) sixty

days of the Administrative Hearings Bureau ordinance being

adopted and made available in the city clerk's office for public

inspection and copying.

63. **When the managing member of the 232 West Mason LLC,**

**Loren Romain, inquired of the Election and Records**

**Coordinator within the Jackson city clerk's office, Cynthia**

**Clementin, to obtain a copy of the procedural rules the**

**Administrative Hearings Bureau deploys while adjudicating hearings, Clementin stated in writing via electronic mail that no such copy of Administrative Hearings Bureau procedural rules existed within her realm even though she admits that "I only have information that is Resolution or Ordinance related".  The request made by Romain is pursuant to city of Jackson Ordinance 2.5 Section 15.** See Email Communication Dated April 3, 2020 from Cynthia Clementin Regarding Obtaining a Copy of Rules Governing ADMINISTRATIVE HEARINGS BUREAU set forth as Exhibit "L".

64. Further inquiry by Loren Romain with the city attorney's office as to which procedural rules have been adopted by the Jackson Administrative Hearings Bureau to clarify statements made by representatives of the City Attorney Office have resulted in vague, ambiguous answers, and a subsequent refusal by Mark Porterfield, Assistant City Attorney, to answer any additional inquiries from the 232 West Mason LLC managing member Loren Romain requesting clarification of Administrative Hearings Bureau procedural rules which are deployed during proceedings. See Email Communication Dated September 14, 2020 from City Attorney Mark Porterfield Asserting No Further Information will be Provided Regarding Rules of Governing set forth as Exhibit "M".

36

65.  On October 23, 2020, 232 West Mason LLC managing member

Loren Romain requests and receives from Administrative Hearings

Bureau Officer William Thompson executed subpoenas to compel

testimony by both Cynthia Clementin Election and Records

Coordinator in the city of Jackson and Debra Noga, the City legal

clerk. Thompson authorized the subpoenas on October 28. Court

Officer Sandra Walker picked them up that same day at the Jackson

City Hall and forthwith served them upon both Clementin and

Noga.

66.  On October 28, 2020, Assistant city attorney Mark Porterfield filed

a motion to quash the two subpoenas' (See Motion to Quash set

forth as Exhibit "N") that Administrative Hearings Bureau Officer

William Thompson authorized that same day, and the 232 West

Mason LLC had served upon Debra Noga, city legal assistant, and

Cynthia Clementin, Election and Records Coordinator within the

Jackson City Clerk's Office. The subpoena was served to compel

testimony by both Clementin and Noga in the 232 West Mason

LLC trial, in an attempt to determine, if in fact, any adopted

Administrative Hearings Bureau rules existed, as required by

ordinance, which would provide to the 232 West Mason LLC or

any other Respondent appearing in the Administrative Hearings

Bureau, a modicum of Constitutionally mandated Due Process

required to be able to defend against citations issued for blight by the City of Jackson.

67. Porterfield argued in his motion to quash both subpoenas, compelling trial testimony, that neither Noga, the city legal clerk, who disseminated information to Romain on numerous occasions when queried that the Michigan Court Rules govern Administrative Hearings Bureau proceedings, or Cynthia Clementin, Election and Records Coordinator, the department head charged with keeping a copy of the Administrative Hearings Bureau Rules for public inspection and copying, were "irrelevant" witnesses even though, pursuant to local code 2.5-21, requires that William Thompson, Administrative Hearings Bureau Officer, may only issue a subpoena if the information or testimony sought is "Relevant to the case, and Relates to a contested issue in the case." **It would seemingly appear, that the action of the city of Jackson filing a motion to quash testimony to determine if "Rules" may indeed exist as mandated by local statute, that govern the conduct of hearings in the confines of the Jackson Administrative Hearings Bureau, which are necessary for a Respondent to adequately defend against citations and to receive Constitutionally mandated Due Process, is, "irrelevant", in the opinion of the city of Jackson.**

38

68.  At a hearing held on November 23, 2020, to quash a 232 West

Mason submitted subpoena to Noga and Clementin, of which both

were subsequently quashed, during oral argument, **Administrative**

**Hearings Bureau Officer John Kane admits that the Jackson**

**Administrative Hearings Bureau has not formally published or**

**kept on file in the office of the city clerk for public inspection or**

**copying any Rules that are deployed in the Administrative**

**Hearings Bureau as mandated by city of Jackson Ordinance**

**2.5-15 and that "technically, maybe it should be at the clerks**

**desk" (quoting Kane). Furthermore, Kane cavalierly declares**

**that the lack of formally adopted and published Administrative**

**Hearings Bureau Rules in the city clerk's office, as mandated**

**by local ordinance, and necessary for respondents to receive**

**Constitutionally mandated Due Process to be able to adequately**

**defend themselves during proceedings in the Administrative**

**Hearings Bureau is that "that's not really a federal case" and**

**"life goes on" (quoting Kane).** <u>See</u> Hearing Transcript for Motion

to Quash set forth as Exhibit "O".

69.  **<u>Off the record, City Attorney Matthew Haggerty and</u>**

**<u>Administrative Hearings Bureau Officer John Kane both</u>**

**<u>opined to the 232 West Mason LLC managing member, Loren</u>**

**<u>Romain, that Romain, acting in the capacity of a private citizen,</u>**

**should petition the Jackson City Council to lawfully and formally adopt, and then publish in the City Clerk's office, Administrative Hearings Bureau procedural rules that had been mandated by local ordinance to have been adopted and deployed in the Jackson Administrative Hearings Bureau and available for public inspection at the office of the Jackson City Clerk within sixty days (60) of the adoption of the city ordinance (15) Fifteen years earlier when authorizing an Administrative Hearings Bureau within the city of Jackson that heretofore have been unavailable thereby depriving Respondents appearing in that jurisdiction of their Constitutionally mandated 14th Amendment right to Due Process!**

70. Pursuant to the Michigan Court Rules, on September 17, 2020, the 232 West Mason LLC tendered to the city of Jackson Assistant City Attorney Mark Porterfield, by and through its managing member Loren Romain, via electronic mail, a first Request for Admissions to Complainant. <u>See</u> Respondent 232 W Mason LLC First Request for Admissions to Complainant set forth as Exhibit "P"**).**

71. Managing member Loren Romain, electronically mailed Assistant City Attorney Mark Porterfield on September 21, 23, and 24 requesting of Porterfield that he confirm receipt of the admissions

40

Romain sent to him via electronic mail and inquiring if it was the intent of the city to answer them. Porterfield responded to the Respondents third request of inquiry that he had received them, and then stated that **"I cannot discuss the City's legal strategy with you"** (See Email Communication Dated September 24, 2020 with Porterfield on Answering Admissions and Legal Strategy set forth as Exhibit "Q"). It seemingly appears that adhering the Michigan Court Rules, which the city of Jackson alleges governs Administrative Hearings Bureau proceedings, when beneficial to the City, is now nefariously deployed as a "legal strategy" within the city of Jackson's Attorneys Office. See Email Communication Dated September 14, 2020 from City Attorney Mark Porterfield Asserting No Further Information will be Provided Regarding Rules of Governing set forth as Exhibit "M").

72.    On **October 28, 2020,** Romain files a motion in the Administrative Hearings Bureau on behalf of the 232 West Mason LLC that the admissions be deemed admitted as the City has failed to file a response within twenty-eight (28) days pursuant the Michigan Court Rules (MCR 2.312 (b). See Respondents' Motion to Have Requests for Admissions Deemed Admitted by Complainants and Brief in Support set forth as Exhibit "R".

73.  On October 31, 2020, Porterfield files an objection to the motion

41

filed by the 232 West Mason LLC that the admissions be deemed

admitted, pursuant to the Michigan Court Rules, stating in line-item

number five of the objection that the "Petitioner asserts that

**Requests for Admissions are not permitted in the**

**Administrative Hearings Bureau** and Petitioner had no obligation

to provide written responses" (See Petitioner's Response to

Respondent's Motion to Have Requests for Admissions Deemed

Admitted set forth as Exhibit "S"). Porterfield again has

contradicted his earlier confirmation with Romain that Debra

Noga's statement **"She (Cynthia Clementin) sent you City**

**Ordinance 2016-19 when taken together with the Home Rule**

**Act and the Michigan Court Rules, comprise the rules that**

**govern ADMINISTRATIVE HEARINGS BUREAU" is**

**accurate**. See Email Communication Dated September 14, 2020

from City Attorney Mark Porterfield Asserting No Further

Information will be Provided Regarding Rules of Governing set

forth as Exhibit "M").

74. On October 27, 2020, the 232 West Mason LLC filed a motion, by

and through its managing member, Loren Romain, demanding the

recusal (See Respondent's Motion for Recusal set forth as Exhibit

"T") of Administrative Hearings Bureau Officer William

Thompson. Romain argued, pursuant to MCR 2.003(C)(1), that

42

disqualification of a judge is warranted for reasons that include, but

are not limited to the following:

(a) The judge is **biased or prejudiced** for or against a party or attorney.

(b) The judge, based on objective and **reasonable perceptions**, has either

    (i) a **serious risk of actual bias impacting the due process rights of a party as enunciated in [Caperton v Massey, 556 US 868 (2009)], or**

    (ii) **has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct.**

(c) The judge has personal knowledge of disputed evidentiary facts concerning the proceeding.

75. William Thompson has met these criterion well beyond any reasonable standard for recusal as he has demonstrated a bias, failure to complete statutorily mandated training pursuant to 117.4 q (11) (a)-(f), providing his personal opinion on the attempted service of a subpoena upon him to the court officer and then forthwith holding a summary hearing on September 9, 2020 thereby contravening Jackson city ordinance 2.5-18 (c) mandating that a respondent receive a minimum two week notice on any hearing that is scheduled to take place therefore depriving the 232 West Mason LLC and its member of Constitutionally mandated Due Process. <u>See</u> Response to Request for Subpoena set forth as Exhibit "K".

76.  On November 1, 2020, Mark Porterfield filed an objection to the motion filed by the 232 West Mason LLC that William Thompson recuse himself (See Petitioner's Objections to Respondent's Motion for Recusal set forth as Exhibit "U"). This action by Jackson Assistant City Attorney Porterfield is in itself extraordinary as most advocates allow for a presiding Judge or Hearing Officer to make their own determination as to whether to recuse themselves rather than file an objection to a motion for recusal.

77.  A hearing was scheduled for November 4, 2020, for the city to respond to the 232 West Mason motion that William Thompson recuse himself as the presiding Administrative Hearing Officer and to quash the subpoena's served upon Debra Noga and Cynthia Clementin, and that the city be compelled to admit the admissions. See Administrative Hearings Bureau Notice of Trial set forth as Exhibit "V".

78.  Thompson scheduled himself to preside over the hearing on November 4 to quash the 232 West Mason subpoenas to Noga and Clementin, which Thompson authorized, even though this action by Thompson contravenes city of Jackson ordinance 2.5-21 (d) that the same Administrative Hearings Bureau officer who signed a subpoena shall not preside over the hearing of an appeal of the issuance of the subpoena and demonstrates further that Thompson

44

has not received the statutorily mandated training pursuant MCL

117.4q (11) (a), which requires that Administrative Hearings

Bureau Officers receive "Instruction on the rules of procedure of

the administrative hearings that they will conduct." Assistant

Jackson city attorney Mark Porterfield advised William Thompson

on the record at the hearing on November 4 that Thompson is

prohibited, pursuant to Jackson city ordinance 2.5-21 (d), to preside

over a hearing to quash a subpoena which he authorized the

issuance of. (See Administrative Hearings Bureau Order from

William Thompson Dated November 4, 2020 set forth as Exhibit

"W").

79. Thompson, at the same November 4 hearing, again demonstrates a

lack of statutorily mandated formal training and knowledge on the

rules of procedure of the Administrative Hearings Bureau by

contravening city of Jackson ordinance 2.5-18 [c] mandating that a

notice of an Administrative Hearings Bureau  proceeding be served

upon a respondent no less than fourteen (14) days prior to an

Administrative Hearings Bureau hearing and subsequently signs an

order that the hearing to quash the respondents request for

subpoenas by the city of Jackson be held on November 10, 2020, a

mere six days later. This action by Thompson provides eight days

less notice of the hearing to the 232 West Mason LLC than

mandated by local statute. The hearing to quash the subpoenas of Noga and Clementin was rescheduled for November 23, 2020 and Administrative Hearings Bureau Officer John Kane is scheduled to preside over this hearing.

80. Pursuant to a Freedom of Information Act request Loren Romain filed with the City of Jackson, no records exist that demonstrate that Administrative Hearings Bureau Officer John Kane has received any formal statutory training mandated by MCL 117.4(q) prior to presiding over Administrative Hearings Bureau proceedings. See Certificate of Non-Existence of John Kane's Training set forth as Exhibit "X".

81. Loren Romain, then places Serinda Foster, the Administrative Hearings Bureau clerk, on notice by electronic mail on November 5, 2020, that the scheduled hearing date for the motion to quash the Respondents subpoenas, contravenes the city of Jackson ordinance 2.5-18 [c] mandating that a notice of an ADMINISTRATIVE HEARINGS BUREAU hearing be served upon a respondent no less than fourteen (14) days prior to an Administrative Hearings Bureau hearing. (See Email Communication Dated November 5, 2020 with Serinda Foster Regarding Hearing to Quash Subpoena set forth as Exhibit "Y"). Foster responds by electronic mail that the hearing has been rescheduled for November 23, 2020.

82.   The motion for the recusal of William Thompson, tendered by the

232 West Mason LLC, by and through its managing member Loren

Romain, was denied by Thompson at the November 4 hearing. At

the conclusion of the November 4 hearing, Thompson queried 232

West Mason LLC managing member Romain on the record if he

was licensed to practice law in Michigan. Thompson contradicted

what he stated to the Romain at the November 6, 2019, initial

hearing, affirming Romains standing to appear on behalf of the 232

West Mason LLC as long as Romain was an LLC member by now

alleging that Romain may be engaging in the unauthorized practice

of law without a license as Romain is only a member of a limited

liability company and not a licensed attorney in Michigan, which

according to Thompson, is now the required standard for Romain to

appear in the Administrative Hearings Bureau on behalf of the 232

West Mason LLC!

83.   Thompson, in a bizarre and absurd twist of irony, then orders

Romain to engage in the exact same conduct that Thompson alleges

may be the unauthorized practice of law and which Thompson is

questioning, by ordering Romain to prepare and submit a brief for

Thompson's review and ruling on the subject matter of if the

Romain is engaging in the unauthorized practice of law! The

hearing concludes. See Thompson Order to Produce Brief on the

Unauthorized Practice of Law set forth as Exhibit "Z".

84. 232 West Mason LLC managing member Loren Romain is

bewildered by Administrative Hearings Bureau Officer

Thompson's bizarre behavior at the November 4, 2020, hearing and

is suspicious of Thompson's order to 232 West Mason LLC to

prepare a brief on whether Romain is engaging in the unauthorized

practice of law is simply a subterfuge by Thompson to entrap

Romain to further engage in the unauthorized practice of law.

Romain electronically mails Thompson's clerk, Serinda Foster,

requesting of her to inquire of Thompson if Romain has standing to

produce a brief, as ordered by Thompson. See Approval of

Standing set forth as Exhibit "AA".

85. Foster responds to Romain by electronic mail stating that

Thompson asserts that Romain has legal standing to prepare the

brief as ordered! Thompson has de facto recognized, for the second

time, Romains standing in the Administrative Hearings Bureau to

represent the 232 West Mason LLC while simultaneously

questioning that standing with the order that a brief be produced on

the subject matter of the Romains ability to represent the 232 West

Mason LLC! See Approval of Standing set forth as Exhibit "AA".

86. The 232 West Mason LLC receives the Unauthorized Practice of

Law brief prepared by Assistant City Attorney Mark Porterfield

48

(See Mark Porterfield Brief on the Unauthorized Practice of Law set forth as Exhibit "BB"). **Porterfield argues in his brief that the Romain has continuously engaged in the unauthorized practice of law by appearing in the Jackson Administrative Hearings Bureau without legal counsel and therefore contravened state statute. Assistant City Attorney Mark Porterfield by adopting this position in his brief, that the Romain has engaged in the unauthorized practice of law, has provided a de facto admission, that he, <u>Assistant City Attorney Mark Porterfield, has contravened the attorney Michigan Rules of Professional Conduct (MRPC) clause 5.5 and Ethics Opinion C-239 (September 3, 1986) governing attorney conduct by knowingly and continuously engaging with Romain over a prolonged time period arguing various substantive legal issues regarding this dispute, while simultaneously questioning and then arguing with his brief that 232 West Mason managing member, Loren Romain, has no legal standing to do so and is engaged in the unlawful unauthorized practice of law!</u>**

87. With the Covid Emergency in effect, Loren Romain appears telephonically at the November 23, 2020, Administrative Hearings Bureau proceeding to argue his position that a limited liability company member is not engaged in the unlicensed practice of law

49

when appearing on behalf of a limited liability in a Jackson

Administrative Hearings Bureau proceeding. Romain then

forthwith requests permission and standing to appear on behalf of

the 232 West Mason LLC from both Jackson City Attorney

Matthew Haggerty and Administrative Hearings Bureau Officer

Hearing Officer John Kane and to engage in oral argument on

behalf of the 232 West Mason LLC. In a proceeding that has been

inundated with irony since its inception, both Haggerty and Kane

agree that Romain has standing to appear and argue on behalf of the

232 West Mason LLC. Romain then opens oral argument on why,

what he, Haggerty and Kane have mutually agreed to, is valid,

Romain representing the 232 West Mason LLC as its member. (See

Loren Romain Brief on Having Standing to Represent the 232 W

Mason LLC within the Jackson Administrative Hearings Bureau set

forth as Exhibit "CC").

88.   In an undated "Decision Regarding the Unauthorized Practice of

Law" and served upon 232 West Mason LLC member Loren

Romain on December 17, 2020 Administrative Hearings Officer

John Kane  rules that Romain may continue to represent the 232

West Mason LLC within the confines of the Jackson

Administrative Bureau on the condition precedent that Romain

provides to the clerk, Serinda Foster, within 28 days, a resolution

50

from the LLC  allowing him to do so. Romain dutifully complies.

89. **Kane admits in his written "Decision" that it is "common practice" for the Jackson Administrative Hearings Bureau to allow members of a limited liability company to have legal standing and appear on behalf of an LLC in the Jackson Administrative Hearings Bureau for what Kane declares is the "usual scope-which is negotiation between the parties and the entry of a consent judgment" (quoting Kane). <u>In effect, the city of Jackson concedes that an LLC member can appear in the Administrative Hearings Bureau, but only if the LLC member does not defend the LLC or address deficiencies in the City's claim.</u>** This further demonstrates that the Administrative Hearings Bureau is not an impartial tribunal designed to adjudicate grievances but merely a vehicle for the unjust enrichment of the City of Jackson collecting "costs" and "fines". <u>See</u> John Kane Decision Regarding the Unauthorized Practice of Law set forth as Exhibit "DD").

90. Trial was held in the city of Jackson Administrative Hearings Bureau on February 10, 2021, the 232 West Mason LLC, a Michigan limited liability company, represented by and through its managing member, Loren Romain battled the unlawful action by the City Code Enforcement Official, of a citation that was issued to

51

the 232 West Mason LLC after an inspection conducted by City Code Official Ricardo John O'Connor, for an alleged leaking roof of the rental property located at 232 W. Mason in the city of Jackson. Both code enforcement official Ricardo John O'Connor, who issued the citation, and Chief Building Inspector Brian Taylor, testified at this trial that neither of them observed any evidence that demonstrated that the roof was leaking or was not "reasonably weatherproof and waterproof". See John Kane's Order Dated April 20, 2021 Regarding the Testimony of John O'Connor set forth as Exhibit "FF".

91. Furthermore, Chief Building Inspector Brian Taylor, testified at this trial that curling shingles, which Code Enforcement Official Ricardo John O'Connor cited as evidence of a defect, could in fact repel water thereby making the roof "reasonably waterproof and weather proof" therefore comporting with local City code. See John Kane's Order Dated April 20, 2021 Regarding the Testimony of Brian Taylor set forth as Exhibit "GG".

92. The 232 West Mason LLC also argued at the trial conducted in the Administrative Hearings Bureau on February 10, 2021, that the city did not have the statutory authority to conduct inspections on a biannual basis, pursuant to Chapter 14 Code, as was city practice, as the Chapter 14-42 Inspections ordinance did not specify a time

52

period for inspections and therefore was constitutionally void for its vagueness as a person of ordinary intelligence could not decipher what time frame was statutorily authorized by city ordinance as an inspection schedule. Therefore, the 232 West mason LLC argued, the citation that was issued to the 232 West Mason LLC for a roof that was "reasonably weatherproof and waterproof" should be vacated and the Administrative Hearings Bureau case dismissed forthwith with prejudice.  Assistant City Attorney, Mark Porterfield, argued to Administrative Hearing Officer John Kane that a city council resolution existed that provided the city with the statutory authority to conduct Non-Owner Occupied Residential Rental Property Registry inspections on a biannual inspection schedule.

93.   Administrative Hearing Officer John Kane ordered both the city and the Respondent, the 232 West Mason LLC, to produce a "Post Trial" brief, due within thirty days, affirming their positions as to the statutory authority of the city of Jackson to lawfully conduct biannual Non-Owner Occupied Residential Rental Property Registry inspections.

94.   The city schedules rental property inspections to coincide with the statutory two-year rental registration requirement, "Because Chapter 14 of the City Code provides that non-owner-occupied

residential dwellings are to be registered every two years, the city

schedules the inspection cycles to match the registration time

periods", Assistant City Attorney Mark Porterfield argued in his

Jackson Administrative Hearings Bureau post-trial brief. However,

there was no existing statutory authority, City resolution or

ordinance, to align these inspections with the registration cycle

making this inspection scheme an arbitrary, capricious, and void.

95. The Respondent, the 232 West Mason LLC, demonstrated as a

matter of law that Chapter 14 Article II 14-42 (3) Non- Owner

Occupied Residential Rental Property Registry inspection regimen

schedule is arbitrary, capricious, and pursuant to West Bloomfield

Charter Twp. v. Karchon, 209 Mich. App. 43, 530 N.W.2d 99,

1995 Mich. App., and  Northgate Towers Assocs. v. Royal Oak

Charter Twp., 214 Mich. App. 501, 543 N.W.2d 351, 1995 Mich.

App., constitutionally void for its vagueness for the lack of a stated

inspection schedule that an ordinary person of common intelligence

could understand. Therefore, as the inspection of 232 W. Mason

was conducted unlawfully, and without statutory authority, it

should be vacated forthwith, and the citation dismissed. The 232

West Mason LLC demonstrated as a matter of law to

Administrative Hearings Bureau Officer Kane that the citation that

the city issued to the LLC should be dismissed forthwith.

96. **Administrative Hearing Officer John Kane, in his post-trial order addressing the brief from both the city and the 232 West Mason LLC on the Constitutionality and therefore validity of a two year inspection schedule cycle conducted by the city, Chapter 14 Article II Non Owner Occupied Residential Property inspection regimen, placed in writing in his Order that he does not have the statutory authority as an Administrative Hearing Officer to rule upon the Constitutional argument of void for vagueness presented by the Respondent, the 232 West Mason LLC. Therefore, even after ordering that a brief be prepared by both the city of Jackson and the 232 West Mason LLC on that same issue to vacate the inspection of 232 West Mason and dismiss the citation,  <u>Kane then refuses to rule on the issue of the statutory authority of the city to conduct a two-year non-owner-occupied residential property inspection regimen  arguing that this is beyond the purview of the Administrative Hearings Bureau!</u>**

97. Furthermore, Kane addresses in his post-trial order on the affirmative defense of the 232 West Mason LLC to the Chapter 14 Code citation that the roof is not leaking and therefore comports with the city code that a roof be "reasonably waterproof and weatherproof"-"**His [232 West Mason LLC] position is that**

**because the roofs in question do not yet leak, they do not constitute a threat to the tenants' health, safety, or welfare that the City has authority to sanction. He is essentially relying on the adage that, "If it ain't broke, don't fix it. <u>While this is surely common sense in many contexts, the City Housing Code is not one of those contexts".</u>** <u>See</u> John Kane's Order Dated April 20, 2021 Regarding Loren Romain's Closing Argument set forth as Exhibit "HH".

98.  It would seemingly appear that a more appropriate maxim for the City Housing Code would be **"If the City thinks its broke, fix it - even if it's not.". One must ask, is the Jackson City Housing Code special in that, at least in some contexts, it defies all reason, and common sense?**

99.  On April 20, 2021, City of Jackson Administrative Hearings Bureau Officer Kane in his final order subsequently levies Three hundred twenty dollars ($320.00) in costs, in contravention of MCL 117.4q(2) which mandates that the "the expense of the operation of an administrative hearings bureau shall be borne by the city establishing the bureau" and Two Thousand dollars ($2000.00) in fines against the 232 West Mason LLC for the anticipatory contravention of the Chapter 14 Non-Owner-Occupied Residential Property Registry code.  See John Kane's Order Dated April 20,

2021 Regarding Costs and Fines of the Administrative Hearings

Bureau set forth as Exhibit "II".

100. Nowhere in Chapter 14 Article II Minimum Housing Standards is

"reasonably waterproof", reasonably weatherproof, "free of defects

of any kind", defined thereby allowing Code Enforcement Officials,

including Brian Taylor and Ricardo John O'Connor, with

unfettered discretion as to the determination of their meaning.

101. It is the policy and custom of the City building department, Code

Enforcement Officials, Attorney Office and Administrative

Hearings Bureau  to act in consort and tandem to deliberately

deprive property owners and residents of the city of Jackson of their

4th, 5th and 14th Amendment Constitutionally mandated Civil

Rights by creating vague Chapter 14 city codes that are

indecipherable to a person of reasonable intelligence, subsequently

deploy those vague City Codes, then issuing  vague citations

derived from those same indecipherable codes that are so broad in

their allegations as to make them impossible to defend against,

creating by legislative fiat an unlawful Administrative Hearings

Bureau by deliberately ignoring the statutorily mandated

Administrative Hearings Bureau Officer training that benefit those

who are cited for violations,  failing to formally train

Administrative Hearings Bureau Officers prior to their presiding

57

over proceedings, levying unlawful costs to Respondents appearing in the Administrative Hearings Bureau, failing to adopt and provide rules of procedure for the Administrative Hearings Bureau for public viewing and copying as required by ordinance for Respondents to be able to adequately defend against allegations made by Code Enforcement Officials, and then unlawfully collecting fines by and through an Administrative Hearings Bureau created in contravention of state statute. These nefarious actions of the City of Jackson, by and through its various departments, is simply a transparent proverbial "money grab" designed to unjustly unrich the City of Jackson from the pockets of persons who are unfortunate enough to be targeted and victimized by this City.

102. William Thompson is an Administrative Hearings Bureau Officer and licensed attorney.

103. John Kane is an Administrative Hearings Bureau Officer and licensed attorney.

104. Charles Falahee is an Administrative Hearings Bureau Officer and licensed attorney.

105. Matthew Hagerty is the City Attorney of Jackson.

106. Mark Porterfield is the Assistant City of Jackson.

107. Pursuant to testimony in the Administrative Hearings Bureau on February 10, 2021, Brian Taylor, Chief Building Official and

Assistant Direct of the Neighborhood and Economic Operations

Department for the city, which controls the activities of Chapter 14

Code Officials, is a licensed builder and Code Officer for over

twenty years and has "extensive experience in the construction

industry".

108. Pursuant to testimony in the Administrative Hearings Bureau on

February 10, 2021, of Chapter 14 Code Enforcement Official

Ricardo John O'Connor, who is a licensed builder and certified lead

inspector, Chapter 14 Code Enforcement Officials receive extensive

training from the city of Jackson on Chapter 14 Code statute and

implementation.

109. Shane LaPorte is the Director of Neighborhood and Economic

Operations Department for the city, which controls the activities of

Chapter 14 Code Officials, Assistant City Manager of Jackson, and

a former Jackson peace officer.

110. The city of Jackson currently employs four Chapter 14 Code

Enforcement Officials: Ricardo John O'Connor, Michael Brandt,

Lydell Tanner and Dave Batterson.

111. Brandt, Tanner and Batterson are former peace officers.

112. William Mills, of recent, a Chapter 14 Code Official, is a former

peace officer.

113. Pursuant to the Michigan Commission on Law Enforcement

Standards (MCOLES), which statutorily approves the licensing of peace officers, requires that the mandatory basic peace officer training curriculum includes training in, but not limited to, Civil Rights, Search and Seizure (Fourth Amendment), Investigative skills, Constitutional law, and Procedural Justice.

114. The individual Defendants named in this Complaint have received extensive training from the city of Jackson on the statutory provisions and enforcement of the Chapter 14 Code including the issuance of citations.

115. In the case before the court the agents of the city of Jackson have knowingly deprived citizens of the civil right to have a hold and enjoy the benefit real property by, among others, with their following actions:

    a.  Nefariously and intentionally deploying former peace officers as Code Enforcement Officials to coerce and intimidate real property owners in the city of Jackson.

    b.  Deliberately issue vague "blight" citations that are impossible to defend against.

    c.  Willfully and deliberately failing to adopt rules for the Administrative Hearings Bureau proceedings, making it impossible to defend against citations.

    d.  Failing to train Administrative Hearings Bureau Officers

e. Engaged in a systemic deprivation of Due Process rights to Jackson real property owners.

f. Engaged as coconspirators in a systemic illicit operation of what is colloquially known as "Taxation by Citation", to unjustly enrich the City of Jackson with the levying of unlawful fines and costs upon property owners while simultaneously depriving those same real property owners in the City of Jackson of their Constitutionally mandated Civil Rights. <u>See</u> Washington Post Article "*A Missouri Town Demands Substantive Due Process*" set forth as Exhibit "LL".

116. The U.S. Supreme Court has declared that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law". *Malley v. Briggs, 475 U.S. 335, 341 (1986)*

117. Furthermore, "officials are immune unless the law clearly proscribed the actions they took" *Anderson v. Creighton, 483 U.S. 635, 639 (1987) (quoting Mitchell v. Forsyth, 472 U.S. 511 (1985)).*

118. Under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), even federal officials can be sued as individuals for violating constitutional rights.

119.  The Bivens Court wrote: "damages may be obtained for injuries

consequent upon a violation of the Fourth Amendment by

federal officials should hardly seem a surprising proposition.

Historically, damages have been regarded as the ordinary

remedy for an invasion of personal interests in liberty. See

Nixon v. Condon, 286 U.S. 73, 52 S.Ct. 484, 76 L.Ed. 984

(1932); Page 396

120.  Since the fiscal year 2015-16 Administrative Hearings Bureau

has levied Respondents appearing in the bureau Seven Hundred

Ninety-Two Thousand Seven hundred seventy-eight dollars

($792,778.00) in costs. See City of Jackson Budget Revenue

Detail for the Administrative Hearings Bureau for years 2015-

2024 set forth as Exhibit "EE".

121.  An additional Two hundred Sixty thousand dollars

($260,000.00) is projected to be collected in Administrative

Hearings Bureau costs for fiscal years 2022-23 and 2023-24.

See City of Jackson Budget Revenue Detail for the

Administrative Hearings Bureau for years 2015-2024 set forth

as Exhibit "EE".

122.  Since the fiscal year 2015-16 Administrative Hearings Bureau

has levied Respondents appearing in the bureau One Million

Six Hundred Twenty-Thousand Three Hundred and Seventy-

Six Dollars ($1,620,376.00) in fines. <u>See</u> City of Jackson

Budget Revenue Detail for the Administrative Hearings Bureau

for years 2015-2024 set forth as Exhibit "EE".

123. An additional Four Hundred Thirty-Five Thousand Dollars

($435,000.00) is projected to be collected in Administrative

Hearings Bureau fines for fiscal years 2022-23 and 2023-24.

124. The Administrative Hearings Bureau meets twice monthly at

Jackson City Hall to adjudicate blight violations. <u>See</u> The

Jackson Administrative Hearings Bureau 2024 Scheduled Dates

of Hearings set forth as Exhibit "JJ".

125. The Administrative Hearings Bureau docket for April 10, 2024

demonstrated that there were forty five (45) active blight

violation cases and fifteen (15) under review. <u>See</u> The Jackson

Administrative Hearings Bureau Hearing Docket for April 10,

2024 set forth as Exhibit "KK".

## IV.   WHAT HAPPENED TO PLAINTIFFS HAPPENS TO EVERY OTHER RESPONDENT IN THE ADMINISTRATIVE HEARINGS BUREAU IN THE CITY OF JACKSON

126. Plaintiff incorporates the preceding paragraphs.

127. The plight of Plaintiffs illustrates the inherent dangers of the

system set forth by local ordinances as implemented and

administered in consort by the city, by and through its

inspectors, building officials, City Attorney Office, and

Administrative Hearings Bureau staff.

128.   The Administrative Hearings Bureau conducts proceedings

twice per month. <u>See</u> The Jackson Administrative Hearings

Bureau 2024 Scheduled Dates of Hearings set forth as Exhibit

"JJ".

129.   The Administrative Hearings Bureau April 10, 2024 docket had

45 active cases and 15 cases in "Internal Review". <u>See</u> The

Jackson Administrative Hearings Bureau Hearing Docket for

April 10, 2024 set forth as Exhibit "KK".

**V.    CAUSES OF ACTION**

**<u>COUNT ONE</u>**

**VIOLATION OF DUE PROCESS**

***(Facial Challenge: Illicit creation of the Administrative Hearings Bureau by the***

***failure of the city of Jackson to adopt all statutory State formal***

***Administrative Hearings Bureau Officer training requirements mandated for***

***the establishment of an Administrative Hearings Bureau)***

***FACIAL INVALIDITY OF CHAPTER 2.5 ORDINANCE UNDER***

***FOURTEENTH AMENDMENT AND STRICT LIABILITY OF DEFENDANT***

***THE CITY OF JACKSON FOR REDRESS UNDER 42 U.S.C. § 1983 AND***

### ACCOUNTABILITY OF INDIVIDUAL DEFENDANTS UNDER 42 U.S.C. § 1983

130.   Plaintiffs incorporate the preceding paragraphs.

131.   The 14th Amendment to the U.S. Constitution bars the enforcement of ordinances which legislatively deprive a person of their Constitutionally Mandated Rights.

132.   Ordinances are required to provide sufficient notice of their proscriptions and requirements and to contain reasonably clear guidelines to prevent official arbitrariness or discrimination in their enforcement.

133.   Pursuant to 42 USC § 1983, "**Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.**"

134.    The state of Michigan Home Rule City Act, Act 279 of 1909, allows

for the establishment of an Administrative Hearings Bureau within a

municipality, subject to the statutorily mandated requirements

contained therein MCL 117.4q, to adjudicate violations of

ordinances designated as blight violations or charter violations.

135.  Pursuant to MCL 117.4q (11):

"The ordinance establishing the bureau shall provide for

adjudicatory hearings by hearing officers. Each hearing officer shall

be an attorney licensed to practice law in this state for at least 5

years. Hearing officers shall be appointed in a manner consistent

with the charter of the city for the appointment of other municipal

officers or employees and shall only be removed for reasonable

cause. **Before conducting administrative adjudication**

**proceedings, administrative hearing officers <u>shall</u> successfully**

**<u>complete</u> a formal training program which includes all of the**

**following:**

   a) **Instruction on the rules of procedure of the**
      **administrative hearings that they will conduct.**
   b) **Orientation to each subject area of the ordinance**
      **violations that they will adjudicate.**
   c) **Observation of administrative hearings.**
   d) **Participation in hypothetical cases, including ruling on**
      **evidence and issuing final orders.**
   e) **The importance of impartiality in the conduct of the**
      **administrative hearing and adjudication of the**

66

violation.

    **f)  Instructions on the preparation of a record that is adequate for judicial review."**

136. The city of Jackson has adopted training requirements for

Administrative Hearings Bureau Officers:

**Sec. 2.5-14. Administrative hearing officer—Training requirements.**

Before conducting any administrative adjudication proceeding, an administrative hearing officer must have successfully completed a formal training program, which includes the following:

**(1)  Instruction on the rules of procedure of the administrative hearings, which he or she will conduct;**

**(2)  Orientation to each subject area of the code violations, which he or she will adjudicate;**

**(3)  Observation of administrative hearings; and**

**(4)  Participation in hypothetical cases, including ruling on evidence and issuing final orders.**

(Ord. No. 2016-19, § 2, 9-6-16)

137.  What is both disconcerting and telling is that City of Jackson

legislatively, willfully and deliberately omits statutorily mandated

training requirements **e) The importance of impartiality in the**

**conduct of the administrative hearing and adjudication of the**

**violation. f) Instructions on the preparation of a record that is**

**adequate for judicial review".** The two absent formal training

requirements from local ordinance are both to the benefit of the

Respondent who is compelled to appear this illicit and illegitimate local court. This nefarious action of contravening State statute by the City of Jackson by deploying only four of six State mandated formal training requirements in the city's local ordinance for the training of Administrative Hearings Bureau Officers therefore deprives a Respondent appearing in the Administrative Hearings Bureau of their Constitutional Right of Due Process.

138. Furthermore, the city of Jackson places prospective Administrative Hearings Bureau Officer applicants on notice when it advertises for the employment position of an Administrative Hearings Bureau Officer requiring only four of the six State statutory training requirements, (a)-(d). Training requirements (e) and (f), which are clearly and Constitutionally a benefit to a Respondent in the Administrative Hearings Bureau, are also conspicuously and deliberately absent.

139. In addition to the right to recover damages from the City and the individual Defendants under Section 1983, Plaintiffs are also entitled to the declaratory and injunctive relief from Defendants prayed for below. The Chapter 2.5 ordinance as adopted by the City of Jackson on its face violates constitutional guarantees of the right to procedural due process.

**COUNT TWO**

## VIOLATION OF DUE PROCESS

*(Facial Challenge: Void for Vagueness )*

***FACIAL INVALIDITY OF ORDINANCE UNDER FOURTEENTH AMENDMENT AND STRICT LIABILITY OF DEFENDANT THE CITY OF JACKSON FOR REDRESS UNDER 42 U.S.C. § 1983 AND ACCOUNTABILITY OF INDIVIDUAL DEFENDANTS UNDER 42 U.S.C. § 1983***

140.   Plaintiffs incorporate the preceding paragraphs.

141.   The 14th Amendment to the U.S. Constitution bars the enforcement of ordinances which either forbid or require the doing of an act in terms so vague that those of standard common intelligence must guess at their meaning.

142.   Ordinances are required to provide sufficient notice of their proscriptions and requirements and to contain reasonably clear guidelines to prevent official arbitrariness or discrimination in their enforcement.

143.   Jackson City Code 14-72 establishes the standard for roofing. It states, "*Structure.* Every foundation, wall and roof **shall be reasonably weatherproof, waterproof** and rodent-proof, shall be capable of privacy **and kept in good repair** and "**the roof system shall be free of defects".**

144.   **Nowhere in the Chapter 14 Code are "reasonably weatherproof, waterproof, in good repair, and defect"**

defined.

145. **The cited provision of the Jackson City Chapter 14 Code does not provide clearly enumerated standards or definitions sufficient to allow a person of ordinary intelligence to understand when a roof is "reasonably weatherproof, waterproof" or is "in good repair" or has a "defect". As such, the provisions grant unbridled discretion to Code Officials resulting in the arbitrary and selective enforcement of the provision and at worst provide an avenue to a Code Enforcement Official to engage in a deliberate nefarious intent to cite and ticket an inconsequential  Chapter 14-72 "defect", which neither impairs the function or utility of a roof, thereby compelling the homeowner to endure an unnecessary expense to repair or replace a roof because the inspector "does not like the way a roof looks".**

146. On November 6, 2019, the structure located at 232 West Mason was cited by the city of Jackson Code Enforcement Official Ricardo John O'Connor as a direct result of arbitrary, and unlawful application arbitrary, capricious and constitutionally void for its vagueness Chapter 14-72 Jackson City roofing Code.

147. On April 20, 2021, Administrative Hearings Bureau Officer

70

John Kane in his written order levied a fine of Two Thousand Dollars ($2000.00) upon the Respondent, the 232 West Mason LLC, for a contravention of Chapter 14-72 with an additional Three hundred Twenty Dollars ($320.00) in costs.

148. This enforcement action by John Kane was predicated upon testimony by Chief Building Inspector Brian Taylor who testified at the Administrative Hearings Bureau trial on February 10, 2021, that the current condition of the shingles did not allow them "to perform their function". **Taylor further testified that the current condition of the roof violated Section 14-72 that required that the roof be "reasonably weatherproof and waterproof", <u>even though he did not know of any leakage occurring. When Taylor was questioned in cross examination if the current condition of the roof could nonetheless repel water-Taylor confirmed that it could.</u>**

149. **<u>Testimony elicited from Chapter 14 Code Enforcement Official John Ricardo O'Connor on the current condition of the roof is that it had the "potential" to allow water to enter the structures located at 232 W. Mason. O'Connor further testified that he had not seen any signs of leakage in the interior of the home nor had the tenants complained to the</u>**

71

**city about any water leaks attributable to the current**

**condition of the roof.**

150. Administrative Hearings Bureau Officer, John Kane, who

adjudicates Chapter 14 code violations for the city of Jackson,

provides an adequate synopsis of the Chapter 14 Article II

"Minimum Housing Standards" Sections 14-25 through 14-111

for all Non-Owner-Occupied Residential Property owners it

affects within the city of Jackson with his written statement in

his Post Trial Order- "**If it ain't broke, don't fix it. While this**

**is surely common sense in many contexts, the City Housing**

**Code is not one of those contexts".** Quoting Kane from his

post trial order in the matter of city of Jackson v. 232 West

Mason LLC, dated April 20, 2021.

151. Since the adoption and promulgation of an arbitrary, capricious

and constitutionally void for its vagueness Chapter 14-72

ordinance on February 23, 2012, through today's date, the city of

Jackson has unlawfully razed structures, levied fines, and forced

the unnecessary absorption of costs for the repair and/or

replacement of roofs upon many Non-Owner Occupied and

Unoccupied Residential Property owners within the city of

Jackson.

152. "A statute is unconstitutionally vague if it denies fair notice of

72

the standard of conduct for which the citizen is to be held

accountable, or if it is an unrestricted delegation of power which

leaves the definition of its terms to law enforcement officers."

*American-Arab Anti-Discrimination Comm. v. City of Dearborn*,

418 F.3d 600, 608–09 (6th Cir. 2005); *see also Belle Maer*

*Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 556 (6th Cir.

1999) (applying same standards to ordinance). A licensing

scheme must have a "narrow, objective, and definite standards to

guide the licensing authority" so as not to provide undue

discretion to law enforcement. *American-Arab Anti-*

*Discrimination Comm.*, 418 F.3d at 609.

153. Accordingly, the cited ordinance is, on its face, constitutionally

void for its vagueness and its application to these Plaintiffs and

others like them resulted in violations of their due process.

154. Pursuant to 42 USC § 1983, "**Every person who, under color**

**of any statute, ordinance, regulation, custom, or usage, of**

**any State or Territory or the District of Columbia, subjects,**

**or causes to be subjected, any citizen of the United States or**

**other person within the jurisdiction thereof to the**

**deprivation of any rights, privileges, or immunities secured**

**by the Constitution and laws, shall be liable to the party**

**injured in an action at law, suit in equity, or other proper**

**proceeding for redress, except that in any action brought**

**against a judicial officer for an act or omission taken in such**

**officer's judicial capacity, injunctive relief shall not be**

**granted unless a declaratory decree was violated or**

**declaratory relief was unavailable."**

155. In addition to the right to recover damages from the City and the individual Defendants under Section 1983, Plaintiffs are also entitled to the declaratory, exemplary and injunctive relief from Defendants prayed for below. The ordinance on its face violates constitutional guarantees of the right to procedural due process.

## COUNT THREE

## VIOLATION OF DUE PROCESS

*(Facial Challenge: Failure to provide proper notice and a meaningful opportunity to be heard)*

*FACIAL INVALIDITY OF ORDINANCE UNDER FOURTEENTH AMENDMENT AND STRICT LIABILITY OF DEFENDANT THE CITY OF JACKSON FOR REDRESS UNDER 42 U.S.C. § 1983 AND ACCOUNTABILITY OF INDIVIDUAL DEFENDANTS UNDER 42 U.S.C. § 1983*

156. Plaintiffs incorporate the preceding paragraphs.

157. Ordinances are required to provide sufficient notice of their proscriptions and requirements and to contain reasonably clear

74

guidelines to prevent official arbitrariness or discrimination in their enforcement.

158. On or about October 20, 2019, the managing member of the 232 West Mason LLC, Loren Romain, receives a citation from the city of Jackson by first class mail dated October 10, 2019, for a "Housing Code" violation that allegedly occurred on April 25, 2018. Housing Code violations are considered blight and are therefore adjudicated by the city of Jackson Administrative Hearings Bureau. The citation commands Romain to appear at an Administrative Hearings Bureau proceeding on the second floor of the Jackson City Hall on November 6, 2019, at 2:00 p.m. See 232 W Mason Violation and Notice of Hearing as set forth as Exhibit "B".

159. The citation issued by Code Enforcement Officer Ricardo John O'Connor of the City of Jackson to the 232 West Mason LLC states only that **the citation is for a "Housing Code" violation. The citation tendered by O'Connor is so broad as to be meaningless. The citation refers to the entire Chapter 14 Housing Code, which is approximately forty five pages in length and contains 420 subsections.** The citation does not state which subsection of the code was allegedly contravened by the 232 West Mason LLC. Therefore, the 232 West Mason LLC cannot adequately prepare and

defend against such broad allegations contained within the citation and suffers an immediate loss of its constitutional right of Due Process.

160. Pursuant to 42 USC § 1983, "**Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.**"

161. In addition to the right to recover damages from the City and the individual Defendants under Section 1983, Plaintiffs are also entitled to the declaratory, exemplary, and injunctive relief from Defendants prayed for below. The ordinance on its face violates constitutional guarantees of the right to procedural due process.

## COUNT FOUR

### VIOLATION OF DUE PROCESS

*(Facial Challenge: Failure of the city of Jackson to adopt and publish Rules which govern proceedings with the Administrative Hearings Bureau)*

*FACIAL INVALIDITY OF ORDINANCE UNDER FOURTEENTH AMENDMENT AND STRICT LIABILITY OF DEFENDANT THE CITY OF JACKSON FOR REDRESS UNDER 42 U.S.C. § 1983 AND ACCOUNTABILITY OF INDIVIDUAL DEFENDANTS UNDER 42 U.S.C. § 1983*

162.   Plaintiffs incorporate the preceding paragraphs.

163.   Ordinances are required to provide sufficient notice of their proscriptions and requirements and to contain reasonably clear guidelines to prevent official arbitrariness or discrimination in their enforcement.

164.   The state of Michigan Home Rule City Act, Act 279 of 1909, allows for the establishment of an Administrative Hearings Bureau within a municipality, subject to the statutorily mandated requirements.

165.   The City has adopted and enacted a number of such ordinances and regulations, one of which is titled the Chapter 2.5 **Administrative Hearings Bureau** of the Code of Ordinances of the City of Jackson, Michigan, Article I, Sections 2.5-1, *et seq*. ("Article" or "Ordinance").

77

166. The city of Jackson has adopted rules which govern the conduct

of administrative adjudication proceedings:

**Sec. 2.5-15. Rules—Available for public inspection.**

**The rules promulgated by the bureau for the conduct of administrative adjudication proceedings must be published within sixty (60) days of the adoption of this chapter and thereafter kept on file in the office of the city clerk for public inspection and copying during normal business hours.**

(Ord. No. 2016-19, § 2, 9-6-16)

167. At a hearing held on November 23, 2020, **Administrative Hearings Bureau Officer John Kane admits that the Jackson Administrative Hearings Bureau has not formally published or kept on file in the office of the city clerk for public inspection or copying any Rules that are deployed in the Administrative Hearings Bureau as mandated by city of Jackson Ordinance 2.5-15 and that "technically, maybe it should be at the clerks desk" (quoting Kane). Furthermore, Kane cavalierly declares that the lack of formally adopted and published Administrative Hearings Bureau Rules in the city clerk's office, as mandated by local ordinance, and necessary for respondents to receive Constitutionally mandated Due Process to be able to adequately defend themselves during proceedings in the Administrative Hearings Bureau is that "that's not really a federal case" and**

78

"life goes on" (quoting Kane).

168. **City attorney Matthew Haggerty and Administrative Hearings Bureau Officer John Kane then both opine to the 232 West Mason LLC managing member, Loren Romain, that Romain, acting in the capacity of a private citizen, should petition the Jackson City Council to lawfully and formally adopt, and then publish in the City Clerk's office, Administrative Hearings Bureau procedural rules that had been mandated by local ordinance to have been adopted and deployed in the Jackson Administrative Hearings Bureau and available for public inspection at the office of the Jackson City Clerk within sixty days (60) of the adoption of the city ordinance (15) Fifteen years earlier when authorizing an Administrative Hearings Bureau within the city of Jackson that heretofore have been unavailable thereby depriving Respondents appearing in that jurisdiction of their Constitutionally mandated 14th Amendment right to Due Process!**

169. It is the policy and custom of the City to illegally enforce the Chapter 2.5 Ordinance in order to deprive owners of real property in the City of their constitutional right to due process in an effort to drive revenue growth through illegally assessed fees extracted in violation of Plaintiffs' constitutional rights as

set forth herein.

170. The City's failures as set forth in this Complaint are violations of Plaintiffs', and those similarly situated, constitutional due process rights.

171. Pursuant to 42 USC § 1983, "**Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.**"

172. The due process rights of Plaintiffs and others similarly situated have been violated by the City and as a result Plaintiffs have incurred monetary and other damages. Left unchecked, the City and its agents and contractors will continue to ignore and to fail to adopt the Chapter 2.5-15 code Rules mandate in violation of

80

the due process rights of Plaintiffs and other homeowners who

are similarly situated and victimized by this rogue court

operating without rules.

173.   In addition to the right to recover damages from the City and the

individual Defendants under Section 1983, Plaintiffs are also entitled

to the declaratory, exemplary and injunctive relief from Defendants

prayed for below.

## COUNT FIVE

### VIOLATION OF DUE PROCESS

*(Facial Challenge: Failure to provide proper notice and a meaningful*

*opportunity to be heard)*

*FACIAL INVALIDITY OF ORDINANCE UNDER FOURTEENTH*

*AMENDMENT AND STRICT LIABILITY OF DEFENDANT THE CITY OF*

*JACKSON FOR REDRESS UNDER 42 U.S.C. § 1983 AND ACCOUNTABILITY*

*OF INDIVIDUAL DEFENDANTS UNDER 42 U.S.C. § 1983*

174.   Plaintiffs incorporate the preceding paragraphs.

175.   It is unconstitutional to deprive of a person of their property

without Due process of law. U.S. Constitution 14th Amendment;

Michigan Constitution 1963 Article 1, Section 17.

176.   The United States and Michigan Constitutions require that a

person have a meaningful opportunity to be heard as part of their

due process rights.

177.    The city of Jackson has adopted a notice mandate which governs

the notification to a party of administrative adjudication

proceedings:

### Sec. 2.5-18. Notice.

(a)   **Before any administrative adjudication proceeding may be conducted, the parties must be afforded notice in compliance with this section.**

(b)   Unless otherwise provided by law or rule, the issuer of a notice of violation or notice of hearing must specify in the notice his or her name and department; where known, the name and address of the person or entity charged with the violation; the date, time, and place of the violation; the section of the Code or departmental rule or regulation which was allegedly violated; and certify the correctness of the specified information by signing his or her name to the notice with the following: "I declare under the penalties of perjury that the statements above are true to the best of my information, knowledge, and belief." A notice of hearing including the date, time, and location of the hearing and the penalties for failure to appear at the hearing must be included.

(c)   Unless otherwise provided by law or rule, a notice of violation or **notice of hearing must be served upon the alleged violator no less than fourteen (14) calendar days before the date of the hearing:**

(1)   By first class, express mail, or by overnight carrier addressed to the address of the owner of the property as listed by the records of the city assessor or, if the violator is a business entity, in the alternative, at any address identified for its registered agent or at its principal place of business;

(2)   By personal service, including personal service upon an employee or agent of the alleged violator at a place of

business of the alleged violator or otherwise if such service is reasonably calculated to give the alleged violator actual notice; or

(3)   If service cannot be made under subsections (1) or (2) above, when the alleged violator is the owner or manager of the property, by posting a copy of the violation notice on the front entrance of the building or other structure where the violation is found, or if the property is unimproved or fenced off, by posting a copy of the violation notice in a prominent place upon the property where the violation is found.

(d)   In all non-emergency situations, if requested by the respondent, the respondent has at least fifteen (15) days after the date of mailing or other service of a notice of violation or notice of hearing to prepare for a hearing. For purposes of this section "non-emergency situation" means any situation that does not reasonably constitute a threat to the public interest, safety, or welfare.

(Ord. No. 2016-19, § 2, 9-6-16)

178.   The 232 West Mason LLC, by and through its managing member, Loren Romain, served an unsigned subpoena via electronic mail to Administrative Hearings Bureau Officer William Thompson, by and through the city legal assistant, Debra Noga, on May 20, 2020, to produce documents that demonstrate that he, Thompson, has been lawfully and formally trained in the compulsory six statutorily mandated State formal training requirements that must be completed prior to conducting administrative adjudication proceedings. A hearing was scheduled for September 9, 2020 to rule on the issuance of a subpoena to Administrative Hearings

Bureau Officer William Thompson. <u>See</u> New Subpoena for

William Thompson and Order to Produce set forth as Exhibit "I".

179. The 232 West Mason LLC managing member, Loren Romain,

upon reviewing the hearing notice, was surprised to learn that

William Thompson was to preside over the hearing and then rule

on whether the subpoena would be issued to himself and then

complied with. Furthermore, Romain was shocked and dismayed

that the city of Jackson Administrative Hearings Bureau would

demonstrate such a flagrant disregard for impartiality, analogous

to a third world "Banana Republic" justice system, display a

perception of egregious impropriety, and that Thompson himself

would not statutorily recuse himself from such an easily

recognizable conflict of interest by ruling on the authorization

and issuance of a subpoena to himself.

180. Due to a scheduling conflict of managing member Loren

Romain, the 232 West Mason LLC, requested of William

Thompson, by and through the Administrative Hearings Bureau

clerk, Serinda Foster, to adjourn the 232 West Mason LLC

scheduled 9 a.m. morning subpoena request hearing to the

afternoon of September 9 or to a later date. Thompson refused

to adjourn the scheduled hearing. <u>See</u> Email Communication

Dated November 5, 2020 with Serinda Foster Regarding

Hearing to Quash Subpoena set forth as Exhibit "Y".

181.   The 232 West Mason LLC then withdrew the subpoena served

electronically on May 20 and for which a hearing was

scheduled to review on September 9 at 9 a.m. Loren Romain

then placed the Administrative Hearings Bureau clerk, Serinda

Foster, on notice, via electronic mail, of the 232 West Mason

LLC decision to withdraw the previously tendered subpoena on

May 20. Foster acknowledges the withdrawal of the 232 West

Masons LLC subpoena via electronic mail to Romain. See

Email Communication with Serinda Foster Dated September 9,

2020 to Withdraw Subpoena set forth as Exhibit "H".

182.   The 232 West Mason LLC then proceeded to hire a court officer

to serve William Thompson with a new subpoena and an order to

appear and/or produce the documents demonstrating that

Thompson has the statutorily mandated formal training to

adjudicate Administrative Hearings Bureau proceedings (See New

Subpoena for William Thompson and Order to Produce set forth

as Exhibit "I"). Loren Romain, managing member of the 232

West Mason LLC, instructed the Court Officer that when she

conducted the service, to first request that Thompson sign the

bottom of  both the subpoena and order to appear/produce to

remove the legal argument from the City that the subpoena was

defective on its face for not having an Administrative Hearings

Bureau Officers signature authorizing the issuance of a subpoena

and/or order to appear and produce. The court officer dutifully

appeared at the morning hearing that the 232 West Mason LLC

was originally scheduled to attend on September 9, 2020, at 9

a.m. prior to withdrawing the subpoenas, and following Romains

instructions, requested that Thompson sign both documents

thereby authorizing the subpoena and the order to appear and/or

produce. Romain was informed by the court officer that was

retained to serve documents upon Thompson, that upon

requesting of Thompson to sign the subpoena and/order to appear

Thompson uttered to her, **"he withdrew his subpoena-this is**

**asinine".** Thompson, with his egregious comment to the court

officer, further demonstrated a lack of statutorily mandated formal

impartiality training. Thompson subsequently refused to sign

either document presented to him. The processor server then

requested the court clerk, Serinda Foster, to sign the documents.

Before Foster could reply, Thompson interrupted the conversation

between the process server and Foster and stated to the Court

Officer that Serinda Foster was not empowered to sign the

documents. Thompson was then served the unsigned documents

by the process server. See Affidavit of Sandra Walker (Process

86

Server) set forth as Exhibit "J".

183.   Thompson, willfully and egregiously contravening the United

States Constitution and city of Jackson ordinance 2.5-18 [c]

which mandates that a notice of an Administrative Hearings

Bureau proceeding be served upon a respondent no less than

fourteen (14) days prior to a scheduled  hearing (See Email

Communication Dated November 5, 2020 with Serinda Foster

Regarding Hearing to Quash Subpoena set forth as Exhibit "Y"),

forthwith, without any notice to the 232 West Mason LLC, held a

summary hearing, even after acknowledging to the court officer,

who appeared to serve him with a new different subpoena, by

uttering **"he withdrew his subpoena-this is asinine",**

methodically and flagrantly contravenes the Constitutional Right

of Due Process to be heard to the 232 West Mason LLC and its

managing member, Loren Romain.

184.   **Thompson then denied the 232 West Mason LLC request for**

**a subpoena and/or order to appear** for the following reasons: (i)

the documents submitted are defective on their face (ii) **the**

**records requested do not exist,** (iii) **and for additional reasons**

**stated on the record.** Notice was then sent to the 232 West

Mason LLC via electronic mail informing managing member

Loren Romain of this nefarious, unlawful and illegitimate ruling

by William Thompson, Administrative Hearings Bureau Officer.

<u>See</u> Response to Request for Subpoena set forth as Exhibit "K".

185.   Administrative Hearings Bureau Officer William Thompsons act of acknowledging the issuance of a new subpoena and then forthwith holding a summary hearing in contravention of statute and subsequently denying the 232 West Mason LLC the Constitutional right of Due Process does not comport with the rule of law.

## COUNT SIX

### VIOLATION OF FOURTH AMENDMENT
*(Facial Challenge: Warrantless Searches)*

*FACIAL INVALIDITY OF ORDINANCE UNDER FOURTH AMENDMENT AND STRICT LIABILITY OF DEFENDANT THE CITY OF JACKSON FOR REDRESS UNDER 42 U.S.C. § 1983 AND ACCOUNTABILITY OF INDIVIDUAL DEFENDANTS UNDER 42 U.S.C. § 1983*

186.   Plaintiffs incorporate the preceding paragraphs.

187.   The Fourth Amendment to the U.S. Constitution prevents the government from conducting unreasonable searches and provides that warrants, based on probable cause, are required before searching a house.

188.   As adopted by the City, Chapter 14 Section 14-42 (5) Inspection regimen of the Chapter 14 Housing Code "**In a nonemergency**

88

situation …….the chief building official, chief of police or fire official **shall obtain a warrant from a court of competent jurisdiction".**

189.   When city inspectors arrive at a rental location for a Chapter 14 code inspection, they do not have in their possession a search warrant to conduct an inspection as mandated by Chapter 14-42 (5).

190.   The inspector then demands that the property owner sign a consent to search document. The Code Enforcement Official places the property owner on notice that if they do not sign the consent form, the property owner will be penalized financially by being charged a one hour "failure to allow access" penalty of two hundred fifty-five dollars ($255.00) any time the property owner does not allow the city Code Official to inspect the property without a warrant as required by local ordinance. The city will typically engage in three attempts to inspect a property prior to seeking and obtaining a search warrant and the homeowner will subsequently be threatened to be penalized three times for not providing written consent to the inspector to search the property without a warrant.

191.   The failure of the city of Jackson to appear at a "nonemergency" scheduled in advance routine housing inspection without a

search warrant and then threatening a property owner with a fine

for not signing a consent form to allow a Chapter 14 search is an

aggressive act of intimidation that cannot comport with the rule

of law.

192. Two Supreme Court cases explain this doctrine. First, in

Camara, the Court invalidated parts of a housing code that

permitted the City of San Francisco employees to enter any

premises to perform any function required by the city code.

*Camara*, 387 U.S. at 525–26. The Supreme Court reasoned that

the administrative searches were a "significant intrusion upon

the interests protected by the Fourth Amendment." *Id.* at 534.

Specifically, the Court explained that:

**When the inspector demands entry, the occupant has no way of knowing whether enforcement of the municipal code involved requires inspection of his premises, no way of knowing the lawful limits of the inspector's power to search, and no way of knowing whether the inspector himself is acting under proper authorization.**

*Id.* at 532. Accordingly, **a pre-compliance procedure was necessary**

**for this housing code to comply with the Fourth Amendment**. *Id.*

193. Second, the Supreme Court invalidated a Los Angeles ordinance

requiring hotel operators to record and provide police their guest

lists, as the ordinance subjected noncompliant hotel operators to

a criminal misdemeanor prior to any pre-compliance review.

90

*Patel*, 135 S. Ct. at 2452. The Supreme Court observed that "[a] hotel owner who refuses to give an officer access to his or her registry can be arrested on the spot," and that "[t]he Court has held that business owners cannot reasonably be put to this kind of choice." *Id.* (citing *Camara*, 387 U.S. at 533). **Likewise, in this instance, property owners who do not sign a consent form and grant city inspectors access for an inspection face an immediate fine by being invoiced a ($255.00) two hundred fifty Five dollar lockout fee, regardless of whether the City of Jackson later obtains a warrant to enter as required by statute.**

194.   Furthermore, requiring that property owners relinquish their right to be free of unreasonable searches violates the unconstitutional conditions doctrine that maintains that if the government is prohibited from directly infringing upon the constitutional rights, the government may not affect the same result by offering tangible benefits in exchange for the citizen waiving those rights.

195.   The Supreme Court has held that "an overarching principle, known as the unconstitutional conditions doctrine, that vindicates the Constitution's enumerated rights by preventing the government from coercing people into

giving them up." *Koontz v. St. Johns River Water*

*Management Dist.,* 133 S.Ct. 2586, at 2594 (2013).

196.  It is the policy and custom of the City to illegally enforce the

Chapter 14-42 section in order to deprive owners of rental

properties in the City of their constitutional right to due process

in an effort to drive revenue growth through illegally assessed

fees extracted in violation of Plaintiffs' constitutional rights as

set forth herein.

197.  The City's failures as set forth in this Complaint are violations of

Plaintiffs', and those similarly situated' s, constitutional due

process rights.

198.  Pursuant to 42 USC § 1983, "**Every person who, under color**

**of any statute, ordinance, regulation, custom, or usage, of**

**any State or Territory or the District of Columbia, subjects,**

**or causes to be subjected, any citizen of the United States or**

**other person within the jurisdiction thereof to the**

**deprivation of any rights, privileges, or immunities secured**

**by the Constitution and laws, shall be liable to the party**

**injured in an action at law, suit in equity, or other proper**

**proceeding for redress, except that in any action brought**

**against a judicial officer for an act or omission taken in such**

**officer's judicial capacity, injunctive relief shall not be**

**granted unless a declaratory decree was violated or**

**declaratory relief was unavailable."**

199.   The due process rights of Plaintiffs and others similarly situated have been violated by the failure of the City to obtain a search warrant prior to every housing inspection mandated by local statute and as a result Plaintiffs have incurred monetary and other damages. Left unchecked, the City and its agents and contractors will continue to administer the Chapter 14-42 (5) code in violation of the due process rights of Plaintiffs and other homeowners who are similarly situated.

200.   In addition to the right to recover damages from the City and the individual Defendants under Section 1983, Plaintiffs are also entitled to the declaratory, exemplary and injunctive relief from Defendants prayed for below. The failure of the Code Enforcement Official to obtain a warrant as required to conduct an inspection violates constitutional guarantees of the right to procedural due process.

## COUNT SEVEN

## MUNICIPAL LIABILITY

201.   Plaintiffs incorporate the preceding paragraphs.

202.   As set forth herein, the City and its Agents have administered the

City Code in ways that deprive owners of Non-Owner-Occupied

Residential Property subject to a Chapter 14 inspection and those

unfortunate enough to be compelled to appear in the City

organized Chapter 2.5 Administrative Hearings Bureau City of

their due process rights.

203.  More specifically, the City through their policies and customs,

implemented and enforced by their Building Department

management, Code Enforcement Officials, City Attorney Office

and Administrative Hearings Bureau has circumvented the

requirements of due process by:

a. Deploying the provisions of the Chapter 14 Article II Minimum

Housing Standards that do not provide clearly enumerated

standards or definitions sufficient to allow a person of ordinary

intelligence to understand what is required to comply with the

Chapter 14 Code Inspection or otherwise to get into compliance

after violations are alleged. As such, the provisions grant

unbridled discretion to Code Officials resulting in the arbitrary

and selective enforcement of the provisions such as 14-72 "roof

shall be reasonably weatherproof and waterproof".

b.  Code Enforcement Officials issuing citations that are so broad

and sweeping in their allegations as to be meaningless.

c. The City organized Chapter 2.5 Administrative Hearings

94

Bureau that was legislatively created by the City of Jackson

deliberately contravening State statute by adopting only four of

six statutorily mandated formal training requirements for

Administrative Hearing Officers adjudicating proceedings.

Conspicuously missing from local statute are training

requirements that benefit a Respondent appearing in the bureau

thereby denying them their constitutionally mandated Due

Process.

d. The practice of invoicing the costs of appearing in the

Administrative Hearings Bureau to the Respondent, which is

forbidden by State statute.

e. Failure to obtain an administrative search warrant for a non

emergency scheduled inspection of a Chapter 14 N.O.O.R.P property

as mandated by statute.

f. Coercing the owner of a Chapter 14 N.O.O.R.P property to relinquish

their right to be free from an unreasonable search by threatening

immediate fines unless the property owner signs a consent to search

document.

g. Failing to publish and disseminate the Rules, as required by statute,

that govern proceedings within the Chapter 2.5 Administrative

Hearings Bureau therefore making it impossible for Respondent to

adequately defend themselves when appearing in the bureau.

h. Issuing tickets and violations against homeowner's without first complying with the procedural due process afforded by the United States and Michigan constitutions.

i. Failure to provide training to Chapter 2.5 Administrative Hearings Bureau Officers in two mandated training topics which benefit the Respondents appearing in the Bureau.

j. Chapter 2.5 Administrative Hearings Bureau Officers quashing subpoenas against themselves without any constitutionally mandated notice to the Respondent.

204. In this regard and as a routine part of their policies and customs, the City, their Building department management, Code Officials and Administrative Hearings Bureau staff have deprived Plaintiffs, and thousands of other property owners in the City, of their rights to a meaningful opportunity to be heard and thus their constitutional right to due process.

205. The reason the city and their Building Department management Code Officials, Attorney Office staff, and Administrative Hearings Bureau staff fail in this respect is because they are driven by profit making through "costs" and "fines" generation in the Administrative Hearings Bureau rather than a legitimate governmental interest in preserving and protecting the safety and welfare of occupants of housing. The City's desired purpose is to

unjustly enrich the city by deploying arbitrary, capricious, constitutionally void for their vagueness and violation of Due Process city of Jackson Ordinances in order to generate funding to finance their cash-strapped municipality.

206.   As a direct result of and due to the driving force behind the City Attorney, Building Department management, Code Officials and Administrative Hearings Bureau staff refusal to provide constitutional due process, Plaintiff's, and thousands like them have been forced to pay unlawful Administrative Hearings Bureau levied" costs" and "fines. Plaintiffs and thousands like them have also been forced to perform repairs on property for items not required by the City Code at the mere whims of the code officials. Given this manner and form of the City's and their Agent's administration of the Code, homeowners are deprived of their due process right to notice and a meaningful opportunity to be heard.

## COUNT EIGHT

### UNJUST ENRICHMENT
**(Unlawfully invoicing the costs of appearing in the Administrative Hearings Bureau to the Respondent)**

207.   Plaintiffs incorporate the preceding paragraphs.

208.   Defendant City of Jackson has acquired and /or is in possession

of funds that it is not entitled to retain.

209.   A suit seeking the return of specific funds wrongfully collected

or held by a state actor may be maintained in equity.

210.   Unjust enrichment exists when there is:

1) A benefit conferred by a plaintiff upon a defendant;

2) Knowledge by the defendant of the benefit; and

3) Retention of the benefit by the defendant under circumstances

where it would be unjust to do so without payment (i.e., the "unjust

enrichment" element).

211.   Plaintiff has disputed many fees forcefully paid to defendant.

212.   Through its Chapter 2.5 Administrative Hearings Bureau

"blight" violation adjudication scheme the City of Jackson has

acquired funds rightfully belonging to plaintiffs and many others

by unlawfully invoicing a Respondent who appears in the

Administrative Hearings Bureau three hundred twenty dollars

($320.00) for the alleged cost of an appearance.

213.   The State statute which governs the establishment of an

Administrative Hearings Bureau, MCL 117.4(q) (2) is

unambiguously clear that **"The expense of the operation of an

administrative hearings bureau shall be borne by the city

establishing the bureau".**

214.   Defendant acquired these monies to fund cash strapped city.

215. It would be unconscionable for the City of Jackson to retain and/or abstain from returning these fees assessed in contravention of State statute from an Administrative Hearings Bureau founded with the intent to deprive Respondents of the constitutionally mandated rights and whose formation is for the **"usual scope-which is negotiation between the parties and the entry of a consent judgment"**, rather than the adjudication of an alleged "blight" violation by an impartial tribunal.

216. Therefore, the City of Jackson must be compelled to disgorge these funds that were acquired through unjust enrichment.

## COUNT NINE

### UNJUST ENRICHMENT
**(Invoicing arbitrary and capricious costs of $320.00 to a Respondent appearing in the Administrative Hearings Bureau without a City Resolution authorizing such costs)**

217. Plaintiffs incorporate the preceding paragraphs.

218. Defendant City of Jackson has acquired and /or is in possession of funds that it is not entitled to retain.

219. A suit seeking the return of specific funds wrongfully collected or held by a state actor may be maintained in equity.

220. Unjust enrichment exists when there is:

4) A benefit conferred by a plaintiff upon a defendant;

99

5) Knowledge by the defendant of the benefit; and

6) Retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment (i.e., the "unjust enrichment" element).

221. Plaintiff has disputed many fees forcefully paid to defendant.

222. Through its Chapter 2.5 Administrative Hearings Bureau "blight" violation adjudication scheme the City of Jackson has acquired funds rightfully belonging to plaintiffs and many others by unlawfully invoicing a Respondent who appears in the Administrative Hearings Bureau three hundred twenty dollars ($320.00) for the alleged cost of an appearance.

223. **No City of Jackson resolution exists, as admitted by city Assistant Attorney Mark Porterfield, establishing the amount of a "cost" associated with an appearance of a Respondent in the Administrative Hearings Bureau. Therefore, the current cost being levied upon a Respondent for appearing in the Administrative Hearings Bureau, three hundred twenty dollars ($320.00), is arbitrary, capricious, and unlawful.**

224. The costs levied to the Respondent for an appearance in the Administrative Hearings Bureau far exceed any appearance costs that may be assessed in the local District Court for similar

proceedings.

225.   Defendant acquired these monies to fund its cash strapped city.

226.   It would be unconscionable for the City of Jackson to retain these fees assessed in contravention of State statute from an Administrative Hearings Bureau founded with the intent to deprive Respondents of the constitutionally mandated rights and whose formation is for the **"usual scope-which is negotiation between the parties and the entry of a consent judgment"**, rather than the adjudication of an alleged "blight" violation by an impartial tribunal.

227.   Therefore, the City of Jackson must be compelled to disgorge these funds that were acquired through unjust enrichment.


## COUNT TEN

### UNJUST ENRICHMENT
**(Unlawfully levying and collecting of fines in an Administrative Hearings Bureau which contravenes State and local statutes.)**


228.   Plaintiffs incorporate the preceding paragraphs.

229.   Defendant City of Jackson has acquired and /or is in possession of funds that it is not entitled to retain.

230.   A suit seeking the return of specific funds wrongfully collected or held by a state actor may be maintained in equity.

231.   Unjust enrichment exists when there is:

7) A benefit conferred by a plaintiff upon a defendant;

8) Knowledge by the defendant of the benefit; and

9) Retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment (i.e., the "unjust enrichment" element).

232. The city has adopted and enacted a number of codes and ordinances pursuant to the Home Rule City Act and MCL 117.3 (K).

233. The City has adopted and enacted a number of such ordinances and regulations, one of which is titled the Chapter 2.5 **Administrative Hearings Bureau** of the Code of Ordinances of the City of Jackson, Michigan, Article I, Sections 2.5-1, *et seq*. ("Article" or "Ordinance").

234. Pursuant to MCL 117.4q (11):

"The ordinance establishing the bureau shall provide for adjudicatory hearings by hearing officers. Each hearing officer shall be an attorney licensed to practice law in this state for at least 5 years. Hearing officers shall be appointed in a manner consistent with the charter of the city for the appointment of other municipal officers or employees and shall only be removed for reasonable cause. **Before conducting administrative adjudication proceedings, administrative hearing officers <u>shall successfully complete a formal training program which includes all of the</u>**

**following:**

    g) Instruction on the rules of procedure of the administrative hearings that they will conduct.

    h) Orientation to each subject area of the ordinance violations that they will adjudicate.

    i) Observation of administrative hearings.

    j) Participation in hypothetical cases, including ruling on evidence and issuing final orders.

    k) **The importance of impartiality in the conduct of the administrative hearing and adjudication of the violation.**

    l) **Instructions on the preparation of a record that is adequate for judicial review."**

235. The city of Jackson has adopted training requirements for

Administrative Hearings Bureau Officers:

**Sec. 2.5-14. Administrative hearing officer—Training requirements.**

Before conducting any administrative adjudication proceeding, an administrative hearing officer must have successfully completed a formal training program, which includes the following:

**(1)  Instruction on the rules of procedure of the administrative hearings, which he or she will conduct;**

**(2)  Orientation to each subject area of the code violations, which he or she will adjudicate;**

**(3)  Observation of administrative hearings; and**

**(4)  Participation in hypothetical cases, including**

**ruling on evidence and issuing final orders.**

(Ord. No. 2016-19, § 2, 9-6-16)

236.  What is both revealing and telling is that City of Jackson legislatively, willfully and deliberately omits statutorily mandated training requirements **e) The importance of impartiality in the conduct of the administrative hearing and adjudication of the violation. f) Instructions on the preparation of a record that is adequate for judicial review."** for Administrative Hearings Bureau Officers training from the City of Jackson ordinance which would be to the Constitutional benefit of the Respondent appearing in the Administrative Hearings Bureau thereby depriving that Respondent of their Constitutional Right of Due Process.

237. The city of Jackson advertises for the employment position of an Administrative Hearings Bureau Officer requiring only four of the six State statutory training requirements, (a)-(d). Training requirements (e) and (f), which are clearly and Constitutionally a benefit to a Respondent in the Administrative Hearings Bureau, are conspicuously and deliberately absent. See Administrative Hearings Office Employment Posting set forth as Exhibit "A".

238. The city of Jackson has adopted rules which govern the conduct of administrative adjudication proceedings:

**Sec. 2.5-15. Rules—Available for public inspection.**

**The rules promulgated by the bureau for the conduct of administrative adjudication proceedings must be published within sixty (60) days of the adoption of this chapter and thereafter kept on file in the office of the city clerk for public inspection and copying during normal business hours.**

(Ord. No. 2016-19, § 2, 9-6-16)

239. At a hearing held on November 23, 2020, **Administrative Hearings Bureau Officer John Kane admits that the Jackson Administrative Hearings Bureau has not formally published or kept on file in the office of the city clerk for public inspection or copying any Rules that are deployed in the Administrative Hearings Bureau as mandated by city of Jackson Ordinance 2.5-15 and that "technically, maybe it should be at the clerks desk" (quoting Kane). Furthermore, Kane cavalierly declares that the lack of formally adopted and published Administrative Hearings Bureau Rules in the city clerk's office, as mandated by local ordinance, and necessary for respondents to receive Constitutionally mandated Due Process to be able to adequately defend themselves during proceedings in the Administrative Hearings Bureau is that "that's not really a federal case" and "life goes on" (quoting Kane).**

240.   Since the fiscal year 2015-16, the Administrative Hearings

Bureau has unlawfully collected in Chapter 2.5 costs and fines

over Three million one hundred thousand dollars

($3,100,000.00).

241.   Defendant unlawfully acquired these monies to fund its cash

strapped City.

242.   It would be unconscionable for the City of Jackson to retain

and/or abstain from returning these fees assessed in

contravention of State statute from an Administrative Hearings

Bureau founded with the intent to deprive Respondents of the

Constitutionally mandated rights and whose formation is for the

**"usual scope-which is negotiation between the parties and

the entry of a consent judgment"**, rather than the adjudication

of an alleged "blight" violation by an impartial tribunal.

243.   Therefore, the City of Jackson must be compelled to disgorge

these funds that were acquired through unjust enrichment.


## COUNT ELEVEN

### UNJUST ENRICHMENT
**(Assessing fines to a Respondent appearing in the Administrative Hearings Bureau
without a City Ordinance authorizing an amount for such fines)**


244.   Plaintiffs incorporate the preceding paragraphs.

245.   Defendant City of Jackson has acquired and /or is in possession

of funds that it is not entitled to retain.

246.   A suit seeking the return of specific funds wrongfully collected

or held by a state actor may be maintained in equity.

247.   Unjust enrichment exists when there is:

10)    A benefit conferred by a plaintiff upon a defendant;

11)    Knowledge by the defendant of the benefit; and

12)    Retention of the benefit by the defendant under circumstances

where it would be unjust to do so without payment (i.e., the "unjust

enrichment" element).

248.   Plaintiff has disputed many fees forcefully paid to defendant.

249.   Chapter 2.5 Section 53 "Penalties" is unambiguously clear that

"The city council will establish a schedule for the potential fines

for violations by resolution, and as amended from time to time".

250.   The City of Jackson does not have a City Resolution that

establishes a schedule for potential fines for violations levied by

the Administrative Hearings Bureau.

251.   Defendant unlawfully acquired these monies to fund its cash

strapped city.

252.   It would be unconscionable for the City of Jackson to retain

and/or abstain from returning these fees assessed in

contravention of State statute from an Administrative Hearings

Bureau founded with the intent to deprive Respondents of the

constitutionally mandated rights and whose formation is for the

**"usual scope-which is negotiation between the parties and the entry of a consent judgment"**, rather than the adjudication of an alleged "blight" violation by an impartial tribunal.

253. Therefore, the City of Jackson must be compelled to disgorge these funds that were acquired through unjust enrichment.

## COUNT TWELVE

### DECLARATORY RELIEF (Compel the administrative Hearings Bureau to adopt the requirements of MCL 1174.q in its entirety)

254. Plaintiffs incorporate the preceding paragraphs.

255. An actual controversy exists between **232 West Mason LLC,** and the City of Jackson, its Building Department management, Code Enforcement Officials, and Administrative Hearings Bureau regarding their administration of the City Codes in violation of clearly established due process rights.

256. Plaintiffs and others similarly situated are entitled to a declaration of their rights to due process in the context of the City Code processes related to an appearance in the Administrative Hearings Bureau and ask that the Court determine that the City and their Agents must comply with meaningful procedural due process requirements mandated by

the United States Constitution and Michigan Constitutions and

therefore formally adopt and adhere to all sections of MCL

117.4q .

## COUNT THIRTEEN

### DECLARATORY RELIEF (Compel the City to obtain a search warrant for all nonemergency Chapter 14 N.O.O.R.P inspections)

257.   Plaintiffs incorporate the preceding paragraphs.

258.   An actual controversy exists between 232 West Mason LLC, and

the City of Jackson and its Building Department management

and Code Enforcement Officials Chapter 14 Article II

"Minimum Housing Standards" Section 42 (5) of the City Code.

259.   **Plaintiffs and others similarly situated are entitled to a**

**declaration of their right to compel the city of Jackson Code**

**Enforcement Officials to obtain and deploy a search warrant**

**for every nonemergency scheduled in advance Chapter 14**

**inspection as codified in ordinance by the city of Jackson to**

**provide property owners with meaningful procedural due**

**process requirements mandated by the United States**

**Constitution and Michigan Constitution.**

## COUNT FOURTEEN

260.   Plaintiffs incorporate the preceding paragraphs.

261.   An actual controversy exists between 232 West Mason LLC, and the City of Jackson, its Building Department management Code Enforcement Officials, and Administrative Hearings Bureau staff Chapter 2.5 Section 15 "Rules" of the City Code.

262.   **Plaintiffs and others similarly situated are entitled to a declaration of their right to <u>compel the city of Jackson to forthwith adopt rules which govern Administrative Hearings Bureau  proceedings and thereafter be kept on file in the office of the city clerk for public inspection and copying during normal business</u>  as codified in ordinance by the city of Jackson to provide property owners with meaningful procedural due process requirements mandated by the United States Constitution and Michigan Constitution.**

## <u>COUNT FIFTEEN</u>

### REQUEST FOR EMERGENCY INJUNCTIVE RELIEF
### DISBAND BUREAU

263.   Plaintiffs incorporate the preceding paragraphs.

264.   The City, through its Attorney Office, building department management, Code Enforcement Officials and Administrative Hearings Bureau staff, continues to issue and enforce citations in direct violation of the constitutional due process requirements set forth in the Michigan Constitution, United States Constitution

110

and Supreme Court jurisprudence.

265. Plaintiffs, and those similarly situated, are still being denied their right to Due Process in the Administrative Hearings Bureau as set forth by the United States Constitution and Supreme Court jurisprudence.

266. As such, the City, acting in consort with Building Department management, Code Enforcement Officials, and Administrative Hearings Bureau officials, will continue to issue tickets to Plaintiffs and those similarly situated for failing to comply with a vaguely worded City Code that does not give property owners clear notice of what constitutes a violation, obtain the required Administrative Search Warrant mandate for every Chapter 14 inspection, and adjudicates citations issued in an illegally created Administrative Hearings Bureau that contravenes the Constitution, Supreme Court jurisprudence and State statute. Under the current regime, the City will continue to reap an illegal windfall for continuing to violate clearly established constitutional rights.

267. Given these circumstances, the losses to Plaintiffs and other owners of real property in the City are imminent and as such Plaintiffs request injunctive relief and an order stopping the City, its Attorney Office, Building Department Management, Code

Enforcement Officials and Administrative Hearings Bureau from its illegal and unconstitutional practices including, but not limited to, the failure to adopt all mandatory training requirements for Administrative Hearings Bureau Officers, failure to train Administrative Hearings Bureau Officers, failure to obtain an administrative search warrant for all scheduled Chapter 14 inspections, and the failure to adopt rules to adjudicate Administrative Hearings Bureau proceedings.

268. Upon information and belief, the docket from the Administrative Hearings Bureau Wednesday, April, 10, 2024 hearing alone lists forty five (45) separate cases in adjudication whose Respondents are experiencing the same deprivation of their Constitutional rights as the Plaintiff has. See The Jackson Administrative Hearings Bureau Hearing Docket for April 10, 2024, set forth as Exhibit "KK".

269. Plaintiff will likely prevail on the merits.

270. Plaintiff, and others similarly situated, have and/or will suffer imminent and irreparable harm unless an injunction is issued.

271. The risk of loss to Plaintiff, and others similarly situated, exceeds any risk to the Defendant if an injunction is not issued.

272. WHEREFORE, Plaintiff respectfully requests this Honorable Court to:

   1) Issue a preliminary and permanent injunction prohibiting

the City from adjudicating any Administrative Hearings

Bureau proceedings until the city of Jackson

Administrative Hearings Bureau adopts and deploys all

mandated requirements pursuant to MCL 117.4q and City

of Jackson ordinance 2.5-15.

   2) Issue a preliminary and permanent injunction prohibiting the city

from conducting all Chapter 14 Non Owner-Occupied

Residential Property inspection regimen searches without the

benefit of an administrative search warrant pursuant to Chapter

14-42 (5).

## VI.   CLASS ALLEGATIONS

273. Plaintiffs incorporate the preceding paragraphs.

274. All Plaintiffs and putative class members have suffered and

continue to suffer similar harm due to having their property

taken by the City without minimum due process. After not

receiving adequate notice or a meaningful opportunity to be

heard, the Plaintiffs and class members are then faced with

multiplying levies for failure to pay improperly assessed fees.

275. **Class Definition.** Plaintiffs seeks to certify the following classes:

a. All persons and entities who appeared in the unlawfully

created Jackson Administrative Hearings Bureau that when

created failed to adopt all mandated statutory formal training

requirements for Administrative Hearings Bureau Officer

adjudicating Administrative Hearings Bureau proceedings, and

failed to adopt, publish and make available for copying and

inspection, rules  of procedure which govern Administrative

Hearings Bureau proceedings, thereby depriving appearing

Respondents of their constitutionally mandated Rights from the

date of the ordinance creating the Bureau on March 22, 2012

and up to and including April 15, 2024 and whom were

subsequently and unlawfully assessed "costs" which became a

lien or whom subsequently paid them.

b.      All persons and entities who appeared in the unlawfully

created Jackson Administrative Hearings Bureau that when

created failed to adopt all mandated statutory formal training

requirements for Administrative Hearings Bureau Officer

adjudicating Administrative Hearings Bureau proceedings, and

failed to adopt, publish and make available for copying and

inspection, rules  of procedure which govern Administrative

Hearings Bureau proceedings, thereby depriving appearing

Respondents of their constitutionally mandated Rights from the

date of the ordinance creating the Bureau on January 1, 2005

and up to and including April 15, 2024 and whom were

subsequently and unlawfully assessed "fines" which became a

lien or whom subsequently paid them.

c.     All persons and entities of whom the City conducted an

inspection of their Chapter 14 Non-Owner-Occupied-Property

without obtaining a search warrant as mandated by local statute

14-42 (5) subsequently contravening their Fourth, Fifth and

Fourteenth Amendment rights.

276.   Numerosity.  The proposed classes are so numerous that joinder

of all members is impracticable. While the exact number of class

members is not now known, Plaintiffs believe the class numbers

are in excess of Three Thousand (**3,000).** These members may be

readily identified from Defendant's own records.

277.    Commonality. There are questions of law or fact common to the

members of the class that predominate over questions affecting

only individual members.

278.    Among the questions of law or fact common to the class are the

following:

a) Does an Administrative Hearings Bureau created without

adopting all mandatory State statutory requirements forfeit

its legitimacy and therefore ability to adjudicate

proceedings?

b) Why does the City not formally adopt and then publish rules

115

which govern proceedings in Administrative Hearings

Bureau and thereafter have them kept on file in the office of

the city clerk for public inspection and copying during

normal business hours to afford a Respondent Due Process?

c) Why does the City of Jackson assess costs to Respondents

who appear in the Administrative Hearings Bureau when

pursuant to State statute the expense of the operations of the

Administrative Hearings Bureau shall be borne by the City

creating the bureau?

d) Does the City of Jackson Code give clear notice to property

owners of what behavior is permitted, and what behavior is

prohibited?

e) Does the failure of the city to obtain a search warrant, as

required by local statute, to inspect Chapter 14 Non-Owner

Occupied-Property real property comport with the United

States Constitution and Michigan Constitution?

f) Why is the city issuing citations to appear in an

Administrative Hearings Bureau that are so broad as to be

meaningless thereby making it difficult, if not impossible for

a Respondent to defend against and therefore receive Due

Process as mandated by the Michigan Constitution and

United States Constitution?

g) Why does the city of Jackson concede that an LLC member

may appear unrepresented in the Administrative Hearings

Bureau but only if the person does not defend or address any

deficiencies in the city's claims?

h) Is the Administrative Hearings Bureau "masquerading" as an

impartial tribunal as its sole purpose an additional stream of

revenue for the city of Jackson?

279. <u>Typicality</u>.  The harm suffered by Plaintiffs is typical of the harm

suffered by other class members differing only in amount.

Accordingly, the claims of Plaintiffs are the same as those of the other

class members. Resolution of these common questions will determine

the liability of the Defendant to Plaintiffs and the class members in

general. Thus, the claims properly form the basis for class treatment in

this case.

280.   Although the amount of damages between individual class

members may vary, the underlying liability issues remain the

same as between all members of the class and the Defendant.

281.   <u>Adequacy of Representation</u>.  The represented parties will fairly

and adequately assert and protect the interest of the class.

Plaintiffs have already demonstrated their willingness to pursue

this litigation on their own behalf, and they have no known

conflicts with the class members.

282. Plaintiff's counsel will also fairly and adequately represent the interest of the class. Attorney John W. Toivonen is well versed in the facts and substantive law underlying the Plaintiff's claims and has 14 years of general litigation experience.

283. This class action is maintainable under Federal Rule of Civil Procedure 23(b).

284. The maintenance of this action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

   a) The prosecution of separate actions by or against individual members of the class could create a risk of inconsistent or varying adjudications with respect to individual members of the class that would confront the party opposing the class with incompatible standards of conduct; and/or

   b) The prosecution of separate actions by or against individual members of the class would create a risk of adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

285. The party opposing the class has acted or refuses to act on

grounds that apply generally to the class, so that final equitable, injunctive or corresponding declaratory and monetary relief is appropriate respecting the class as a whole. Specifically, Defendants have and continue to deprive homeowners of their right to due process by failing to obtain search warrants for every chapter 14 scheduled inspection, forced real property owners to endure a constitutionally void for vagueness Chapter 14 ordinance, defend against vague citation allegations, and appear in a court that was created in contravention of state statute while simultaneously collecting since 2015-16  nearly three million-one hundred thousand dollars ($3,100,000.00) in fines and costs assessed by a rogue city court- the Administrative Hearings Bureau, in violation of the due process rights of the class.

286.  The questions of law or fact common to class members predominate over any questions affecting only individual members, and as such a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

287.  The action is and will be manageable as a class action and in fact more manageable than the prosecution of separate actions in various forums and venues.

288.   In view of the complexity and importance of the constitutional

issues and expense of the litigation, the separate claims of individual class members are insufficient in amount to support separate actions.

289.   It is probable that the amount which may be recovered for individual class members will be large enough in relation to the expense and effort of administering the action to justify a class action.

290.   Plaintiffs are not aware of any members of the proposed class that have filed similar litigation regarding the City of Jackson Administrative Hearings Bureau nor are Plaintiffs aware of any pending similar litigation in which the city is a Defendant.

291.   The class action is the appropriate method for the fair and efficient adjudication of the controversy. The legal and factual bases for the Plaintiffs' claims are the same as for the claims of all class members. The only difference between individual claims is the severity of the harm and resulting damages. Adjudicating this case on a class wide basis will promote substantial judicial economy by eliminating the likelihood of multiple cases (perhaps thousands) turning on the same questions of law and fact. The class action will also provide the Plaintiffs with the only meaningful avenue for relief, due to the economy of spreading their litigation costs, thereby reducing

each individual's expenses over the class and enabling counsel to pursue the litigation by aggregating the claims. Further, the class action will save the Defendants the burden of defending multiple suits in multiple forums.

## VII.   RELIEF REQUESTED

WHEREFORE, on behalf of itself and others similarly situated, 232 West Mason LLC requests the following relief:

A. That this action be determined as proper to be maintained as a class action pursuant to Federal Rules of Civil Procedure 23(b), together with an order appointing the named Plaintiffs to represent the class and subclass and certifying Plaintiffs' counsel to represent the class and subclass;

B. The injunctive and declaratory relief as applicable and specified in Counts Twelve, Thirteen, Fourteen, and Fifteen;

C. An award of damages, including all applicable interest, in an amount to be determined at trial;

D. An award of costs of this suit, including reasonable attorney's fees, as provided by 42 USC § 1988 or on other grounds;

E. An award of an incentive fee to the named Plaintiffs for having the courage to come forward and challenge the City of Jackson Chapter 2.5 Ordinance and the manner in which it is administered; and/or

F. Any other relief as necessary, to redress the violation of Plaintiff's

rights secured by the Constitution and laws.

G. An award of Exemplary damages to the Plaintiff to deter the city of Jackson or any other likeminded municipality from engaging in a serial contravention of the constitutional rights enumerated in the Michigan Constitution and United States Constitutions.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all claims and issues so triable.

Respectfully submitted by:

/s/ John W. Toivonen
By: John W. Toivonen (P73130)

Dated: April 19, 2024          toivonenesq@gmail.com

122